No. 82-239

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

IN THE MATTER OF: G.L.O.C, T.J.M.,
et al., Youth in Need of Care.

_____

APPEAL FROM:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone,
              The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Megan Combs & D. Michael Eakin argued, Billings,
        Montana

    For Respondent:

        Urban J. Bear Don't Walk, Billings, Montana
        Harold F. Hanser argued, County Attorney,
        Billings, Montana

_____

                        Submitted:  April 22, 1983

                        Decided:    August 18, 1983

Filed:   AUG 18 1983

            *Ethel M. Harrison*
_____
                    Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The father of the children involved in this proceeding, a non-Indian, appeals an order of the Yellowstone County District Court that deprived him of the right to have a hearing and to have counsel before the cause was transferred to the Crow Indian Tribal Court under the provisions of the Indian Child Welfare Act, 25 U.S.C. § 1901, et seq. Before the District Court ordered the transfer pursuant to the Crow Tribe petition, the father had filed a request for appointment of counsel because he was indigent. The father, at the same time, did not expressly declare he would contest the transfer of the children to the jurisdiction of the Crow Tribe. Without acting on the father's request for counsel, the court simply ordered the transfer. The father, through the Yellowstone County Legal Services, filed a request for reconsideration. The trial court denied this, however, on the ground that it was too late to do anything about it--the court had already entered the transfer order. The Crow Tribe, however, did not actually take custody of the children. The children are still in the care of a foster home in Yellowstone County pending the outcome of this appeal. The father, after the District Court refused to reconsider its transfer order, filed an appeal to this Court.

The father raises two issues. First, the father argues that the trial court erred in transferring the proceeding to Crow Tribal Court without giving him an adequate opportunity to be heard. Second, the father argues the trial court erred by failing to appoint counsel for him. We vacate the

- 2 -

transfer order and remand to the District Court for further proceedings.

After the trial court had entered its transfer order, and before it had acted on the father's request for reconsideration, the Yellowstone County Attorney's office urged the court to deny the father's request. The brief of the county attorney also takes this position. However, in oral argument, the Yellowstone County Attorney backed away from this position and simply took the position that the trial courts need guidance in this area and agreed that appointment of counsel was necessary for one to effectively assert his legal rights. The Crow Tribe, which did not appear for oral argument, argues in its brief that because the father did not actually object to the transfer, the trial court had a duty to transfer the matter to the tribe. On the counsel issue, the Crow Tribe argues that because the action in the trial court did not involve an action for removal, placement, or termination of parental rights, appointment of counsel was not required.

We reverse the trial court and hold that before the trial court could transfer jurisdiction, a hearing was required. Further, because the request for appointment of counsel is so inextricably connected with asserting the rights of one who may object to a transfer, we hold that the trial court first had to determine whether the father was entitled to court-appointed counsel before it could proceed with a hearing and enter an order on the transfer question.

The tragic backgrounds of these children's lives only emphasizes the need for procedural fairness in determining whether Indian children should be transferred to the jurisdiction of a tribe upon that tribe's removal request

pursuant to the Indian Child Welfare Act. The procedural fairness was not granted here.

The three children involved are aged 3, 7 and 8. All three children are enrolled members of the Crow Tribe. Before any legal action was started, they were living off the reservation with their mother who is a full-blooded Crow Indian. There is some question as to whether the father is actually the father of all three children, although that determination is not essential to our holding in this case. It is undisputed that he is the father of at least one of the children. The children's young lives are fraught with misfortune.

While the young children were living with their mother, the father was in prison in Deer Lodge. After reports that the mother abused and neglected the children, the State of Montana filed a petition for temporary investigative authority on June 17, 1981, in District Court. The court granted the petition for 90 days, and on September 11, 1981, after the 90 day period had expired, the court placed the children in temporary foster care in Yellowstone County. They have been in temporary foster care ever since.

Less than a month later, while the father was still in prison, the children's mother was murdered. The State then filed on October 9, 1981, a second petition for temporary investigative authority, and the children remained in a foster home. The father had by then been paroled from state prison and while he was at the Yellowstone County Sheriff's office, the State served him with a copy of the second petition for temporary investigative authority. The trial court granted this second petition and extended it twice.

While these extensions were in effect, the father visited the children at the foster home from time to time.

Later, acting in accordance with the Federal Indian Child Welfare Act of 1978 (25 U.S.C. § 1901, et seq.), the State notified the Crow Tribe of the Youths in Need of Care proceedings pending in the state District Court. A couple of months later, on April 6, 1982, the Crow Tribe responded by petitioning the state District Court for a transfer of the proceedings to Tribal Court pursuant to 25 U.S.C. § 1911(b) of the Indian Child Welfare Act. The Tribe served copies of the petition on all attorneys of record and also served the father with a copy.

On April 13, 1983, the father petitioned the District Court for appointment of counsel on the grounds that he was indigent. However, the court did not act on this petition. Rather, on April 14, 1982, without even acknowledging the father's petition or giving the father a chance to object to the transfer of jurisdiction, the court ordered a transfer of jurisdiction to the Crow Tribal Court. The father then obtained the services of Montana Legal Services and petitioned the court to reconsider its order on the grounds that he had not received adequate notice and had been unable to find an attorney to represent him. The court held a hearing, but on June 1, 1982, ruled that the transfer to Crow Tribal Court would remain in effect because the court had lost jurisdiction to reconsider its transfer decision. This appeal followed.

We are at a loss in trying to understand why the trial court ignored our opinion in In Re the Matter of M.E.M. (1981), ___ Mont. ___, 635 P.2d 1313, 38 St.Rep. 1895. There we held that the express language of the Indian Child Welfare

Act requires appointment of counsel for an indigent parent or Indian custodian. The statute declares that:

"In any case in which the court determines indigency, the parent or Indian custodian shall have the right to court-appointed counsel in any removal, placement, or termination proceeding. The court may, in its discretion, appoint counsel for the child upon a finding that such appointment is in the best interest of the child . . . (Emphasis added.) 25 U.S.C. § 1912(b)." In the Matter of M.E.M., 635 P.2d at 1316, 38 St.Rep. at 1898.

Based on this statute, we held that indigency status required appointment of counsel. M.E.M., 635 P.2d at 1317, 38 St.Rep. at 1899. In requesting appointment of counsel based on indigency status, the father, along with his petition, filed an affidavit setting forth his indigency status. His status as an indigent was never questioned. Yet the trial court proceeded to rule as though the petition had never been filed.

Nor can we understand how the trial court avoided a hearing on the question of whether jurisdiction should be turned over to the Crow Tribe. We also held in M.E.M., 635 P.2d at 1317, 38 St.Rep. at 1900, that under the Indian Child Welfare Act, a jurisdictional hearing is required before the court can enter an order either granting or denying a request for the transfer of jurisdiction of Indian children to tribal custody. Such a hearing is required whenever the Indian children live outside of a reservation. Here no hearing was held, and the trial court simply entered an order transferring jurisdiction to Tribal Court. This order was in flat contravention of our holding in M.E.M.

The trial court must have known that a hearing was required and appointment of counsel for an indigent was required--for the trial judge presiding here also presided in M.E.M. Nonetheless, the trial court proceeded in flat

- 6 -

contravention of our holding in M.E.M. on the hearing requirement and on the appointment of counsel requirement. To avoid a hearing and the appointment of counsel to make that hearing meaningful by the expedient of transferring jurisdiction in an effort to divest itself of jurisdiction would defeat one of the purposes of the Indian Child Welfare Act--that of granting due process to those involved in the process.

As we recognized in M.E.M., 635 P.2d at 1316, 38 St.Rep. 1897, the Indian Child Welfare Act has an underlying thread of preventing the removal of Indian children from their Indian parents and culture. But that objective must be achieved in a manner that comports with due process for all those concerned. We cannot ignore here that at least one of the children, and perhaps all of them, have a mixed ancestry. The mother, who was Indian, was dead, but the father of at least one of the children, and possibly two of the children, was of Caucasion ancestry. He also claimed stepfather status of the third child. The father apparently wanted the state courts to retain jurisdiction. The children resided outside the reservation and may have been totally divorced from Indian culture and have established social and other ties completely divorced from tribal life.

A transfer of jurisdiction to a Tribal Court, without giving a parent the right to object to a transfer of jurisdiction, may have the effect of plunging the children into circumstances that are traumatic or otherwise not in their best interest. That is precisely why a jurisdictional hearing is required before a transfer order is entered, and a hearing can in many instances be meaningless if an indigent parent is deprived of the right to have counsel appointed.

Certainly one of the purposes of the Indian Child Welfare Act is to give due process to all those involved. There can be no due process where no hearing is held and a legitimate request for appointment of counsel is ignored.

The order of the District Court is vacated, and this cause is remanded for proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices