296 S.C. 355 (1988)
372 S.E.2d 912
CHESTER COUNTY DEPARTMENT OF SOCIAL SERVICES, Petitioner-Respondent
v.
Joe L. COLEMAN, Phyllis Coleman, and Dorothy Clark, Indian Child Welfare Coordinator of the Cheyenne River Sioux Juvenile Court, Respondents. In re Billie Jo MORRISON, DOB: 1-1-78, Tara Morrison, DOB: 5-9-79, Jacqueline Coleman, DOB: 10-26-81, Heather Coleman, DOB: 1-31-83, all minor children under the age of Eighteen (18) years, of whom Billie Jo Morrison, Tara Morrison, Jacqueline Coleman and Heather Coleman, by and through their duly appointed Guardian Ad Litem, Richard M. Steele are Appellants.
1219
Court of Appeals of South Carolina.
Heard April 13, 1988.
Decided September 26, 1988.
*356 Robert Marshall Jones, Rock Hill, for appellants.
Claude S. Coleman, Chester, for petitioner-respondent.
Tee Ferguson, Spartanburg, Bruce R. Greene and Elizabeth Meyer, Boulder, Colo., and George M. Hearn, Jr., Conway, for respondents.
Heard April 13, 1988.
Decided September 26, 1988.
Per Curiam:
This appeal arises from a child placement proceeding. It involves the application of the federal Indian Child Welfare Act.[1]
Billie Jo Morrison, Tara Morrison, Jacqueline Coleman, and Heather Coleman are the minor children of Joe and Phyllis Coleman. Phyllis and her daughters are enrolled members of the Cheyenne River Sioux Tribe in South Dakota. Billie Jo and Tara are her daughters by a previous marriage. Jacqueline and Heather are her daughters by Joe Coleman, her present husband. Mr. Coleman is a retired military man. He is a black man, not an Indian.
In November, 1983, the Chester County Department of Social Services commenced an action to remove the children from the Coleman home and transfer their custody to the Department. After a removal hearing, the court found that Billie Jo and Tara had been physically abused, and that Jacqueline and Heather were threatened with substantial harm if allowed to remain in their parents' custody. The court ordered the children to remain in custody of the Department of Social Services. In May, 1984, the Department filed a petition to return the children to their parents. Subsequently, the Department amended that petition to allege the children had been physically and sexually abused by their parents. After a hearing, the court found that the children had been sexually abused and ordered them to be placed with the corresponding Department of Social Services in South Dakota. On an appeal from that order, the *357 Supreme Court remanded the case to the family court to determine the proper placement of the children.
The parties to the placement hearing were the Department; the parents; the children, represented by their guardian ad litem, Cindy Hord; Bob and Stella Redwine, the foster parents of the children; and Dorothy Clark, as the Indian Child Welfare Coordinator of the Cheyenne River Sioux, and also as the representative of the Cheyenne River Sioux Tribe. Clark took the position, on behalf of herself and the tribe, that the children's placement is controlled by the Indian Child Welfare Act, which requires the South Carolina court to transfer the case to the jurisdiction of the Cheyenne River Sioux Juvenile Court, sitting in South Dakota. The family court agreed and ordered custody and jurisdiction to be transferred to the tribal court. The children appeal that ruling. We reverse and remand.
When Congress enacted the Indian Child Welfare Act, it had two main goals: (1) protecting the best interests of Indian children, and (2) promoting the stability and security of Indian tribes and families. To achieve these objectives, the Act sets minimum federal standards for child placement proceedings in order to prevent the unwarranted separation of Indian children from family and tribal heritage. The Act is based on the assumption that protection of the Indian child's relationship to the tribe is in the child's best interest. 25 U.S.C. Section 1902; A.B.M. v. M.H. & A.H., 651 P. (2d) 1170 (Alaska 1982) cert. denied subnom. Hunter v. Maxie, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed. (2d) 283 (1983); In re Adoption of K.L.R.F., 356 Pa. Super. 555, 515 A. (2d) 33 (1986) appeal dismissed, 516 Pa. 520, 533 A. (2d) 708 (1987).
Under the Act, if the tribe or either parent of an Indian child petitions for transfer of the proceeding to the tribal court, the state court cannot proceed with the placement of an Indian child living outside a reservation, without first determining whether jurisdiction of the matter should be transferred to the tribe. 25 U.S.C. Section 1911(b). The statute provides:
In any State court proceeding for the foster care placement of ... an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the

*358 court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon petition of either parent ... or the Indian child's tribe....
25 U.S.C. Section 1911(b). In other words, transfer to the jurisdiction of the tribe is mandatory in the absence of good cause to the contrary.
The phrase "good cause to the contrary" is not defined in the Act itself. However, the legislative history of the statute states that the use of the term "good cause" was designed to provide state courts with flexibility in determining the disposition of a placement proceeding involving an Indian child. H.R. REP. No. 1386, 95th Cong. 2nd Ses. 21, reprinted in 1978 U.S. CODE CONG. & ADMIN. NEWS 7530, 7544. Federal guidelines interpreting the Act define "good cause to the contrary" as including, but not limited to cases where (1) the proceeding is at an advanced stage when the petition to transfer is received and the petition is not promptly filed after receipt of notice; (2) the Indian child is over the age of twelve and objects to the transfer; (3) evidence necessary to decide the case cannot be adequately presented to the tribal court without undue hardship to witnesses and parties; (4) the parents of an Indian child over the age of five are not available and the child has had little or no contact with the child's tribe or members of the child's tribe. Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67583, 67591 (1979) (Not codified). An earlier version of these guidelines also included the case where the Indian child had not resided on the reservation for a significant period of time. See Recommended Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 24000, 24001 (1979). Case law also suggests that "good cause to the contrary" includes the absence of a tribal mechanism for handling child custody matters. In the Matter of the Appeal in Prima County Juvenile Action No. S-903, 130 Ariz. 202, 635 P. (2d) 187 (Ct. App. 1981) cert. denied, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed. (2d) 875 (1982). The burden of establishing good cause to the contrary is on the party opposing the transfer. 44 Fed. Reg. 67583, 67591 (1979). The third element of the guidelines has been applied to deny transfer due to considerations of *359 forum non conveniens, such as availability of witnesses and access to proof. In the Interest of J.R.H. and M.J.H., 358 N.W. (2d) 311 (Iowa 1984).
In this case, the family court failed to consider the various factors which may constitute "good cause" under the statute. This was error. What little we are able to glean from the record indicates that a biological parent of the two older girls, both of whom are over five years of age, may be unavailable; that none of the children has had any contact with the tribe or has resided on the reservation for a significant period of time; and that the material witnesses and evidence relating to placement are in South Carolina, not South Dakota. These factors, together with evidence that removal of the children would be disruptive and detrimental to their best interests, may well constitute "good cause" for the family court to retain jurisdiction of the case.
Because we are unable to make this factual determination on the record before us, we reverse and remand for a redetermination of the issue. In deciding if "good cause to the contrary" exists or not, the family court should make specific findings on the factors outlined above.
Reversed and remanded.
NOTES
[1] Indian Child Welfare Act of 1978, Pub. L. No. 95-608, 92 Stat. 3069 (codified at 25 U.S.C. sections 1901-1963).