**The PEOPLE of the State of South Dakota in the Interests of M.C., Child & Concerning R.W.**

**Nos. 18028, 18061.**

Supreme Court of South Dakota.

Considered on Briefs April 20, 1993.

Decided Aug. 11, 1993.

---

Nora K. Kelley, Rapid City, for appellant, M.C., Child.

Terry L. Pechota of Viken, Viken, Pechota, Leach & Dewell, Rapid City, for intervenor, Rosebud Sioux Tribe.

SABERS, Justice.

Trial court transferred Indian Child custody proceedings to tribal court. Indian Child appeals the transfer. We reverse and remand.

### FACTS

M.C., an Indian girl, was born on June 27, 1990. The State was awarded temporary custody on July 23, 1991. While in relative foster care with her aunt, M.C. was severely burned. Upon her release from the hospital, she was placed in foster care with a non-relative. Although legal custody remained with the State, M.C. was later transferred to relative foster care with her grandmother.

On March 16, 1992, Circuit Judge Jeff Davis held a review hearing and ordered physical custody transferred to M.C.'s mother, R.W., with legal custody to automatically revert to her in 60 days unless a review hearing was scheduled before then.

On April 1, 1992, Judge Davis ordered M.C. removed from her mother's physical custody and transferred to non-relative foster care. Judge Davis also directed the State to file an abuse and neglect petition against R.W.

On April 10, 1992, the State filed a petition alleging that R.W. abused and neglected M.C. and notified the Rosebud Sioux Tribe (Tribe). An advisory/adjudication hearing was held on April 20, 1992. When Judge Davis continued legal and physical custody of M.C. with the State for placement in non-relative foster care, R.W. filed an affidavit for change of judge. On April 23, 1992, Circuit Judge John K. Konenkamp was assigned to the case. On May 18, 1992, Judge Konenkamp ordered that legal and physical custody of M.C. remain with the State in non-relative foster care. An adjudication hearing was scheduled for July 1 and 2, 1992.

The Tribe's motion to intervene was filed on May 4, 1992, and granted on May 21, 1992. On June 26, 1992, the Tribe moved to transfer this case to tribal court.

Late in the day on June 29, 1992, Judge Konenkamp telephoned the parties and scheduled a hearing on the motion to transfer for 8:15 the following morning. M.C. and the State objected to transfer, claiming good cause existed not to transfer. M.C. asked the court to wait and make its decision regarding transfer until after the court had listened to the evidence that M.C. would be presenting the following day at the adjudication hearing. Without waiting, the court found that M.C. and the State had not met their burden and granted the motion to transfer. The Tribe accepted the transfer on June 30, 1992.

M.C. moved for stay of the trial court's order for transfer on August 17, 1992. The trial court denied the stay and M.C. moved for a stay from this court. M.C. was granted a temporary stay on August 21, 1992, pending full consideration by this court. The trial court entered an ex-parte order placing physical custody of M.C. with R.W. This court denied M.C.'s motion for

stay on August 24, 1992. M.C. appeals the trial court's order.

## DECISION

The issue is whether the trial court erred in transferring jurisdiction to the tribal court: (1) because the Tribe's motion to transfer was untimely and (2) without providing M.C. with sufficient notice and an adequate opportunity to be heard, including an evidentiary hearing at which testimony could be presented.

ICWA [Indian Child Welfare Act], codified at 25 U.S.C. §§ 1901 et seq. (1978) was passed by Congress because "it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture[.]"

*In re Dependency and Neglect of A.L.*, 442 N.W.2d 233, 235 (S.D.1989) (quoting 25 U.S.C. § 1902; *Claymore v. Serr*, 405 N.W.2d 650 (S.D.1987)). The two specific purposes of the act: (1) to protect the best interests of Indian children, and (2) to promote the stability of Indian tribes, are based on the assumption that protection of the Indian child's relationship to the tribe is in the child's best interests. *Id.* (citation omitted).

■ To fall within the jurisdiction of ICWA, a child must be an unmarried person under the age of eighteen who is either a member of an Indian Tribe or eligible for membership in an Indian Tribe and the biological child of a member of an Indian Tribe. *Id.;* 25 U.S.C. § 1903(4). It is undisputed that M.C. is an Indian child within the jurisdiction of ICWA. Because she is not domiciled or residing within the reser-

vation of her tribe, the Tribe has concurrent jurisdiction in these proceedings. *See A.L.*, 442 N.W.2d at 235.

■ M.C. argues that the trial court's finding that the Tribe's motion to transfer was timely is clearly erroneous or that the Tribe's motion to transfer was untimely as a matter of law.[1]

"Good cause not to transfer the proceeding may exist if any of the following circumstances exists:

(i) The proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing."

*Id.* at 236 (quoting 44 Fed.Reg. at 67,591). The regulation "is designed to encourage the prompt exercise of the right to petition for transfer in order to avoid unnecessary delays. However, whether a petition is timely must be made on a case-by-case basis. Flexibility is required by the trial court in applying this 'good cause' criteria." *Id.* (citation omitted).

It is undisputed that the Tribe received notice of these proceedings on December 9, 1991. It was not until April 10, 1992, however, that the State filed a formal petition alleging M.C. was abused and neglected. On May 4, 1992, less than one month after receiving notice of this petition, the Tribe moved to intervene and on June 26, 1992, the Tribe moved to transfer jurisdiction. Therefore, M.C. fails to demonstrate that the trial court's finding was clearly erroneous or that the trial court erred as a matter of law.

M.C. also claims that the trial court erred in failing to hold an evidentiary hearing and make findings on whether there was good cause not to transfer jurisdiction. Tribe argues M.C. did not object to the findings or propose her own findings and

---

**1.** The governing standard of review is as follows:

A trial court's findings of fact cannot be set aside unless they are clearly erroneous and we are, after a review of all of the evidence, left with a definite and firm conviction that a mistake has been made. A trial court's con-

clusions of law may be reviewed and set aside on appeal only when the trial court has erred as a matter of law. We will uphold the judgment of the trial court if it is right for any reason.

*A.L.*, 442 N.W.2d at 235 (citations omitted).

therefore, she cannot question them for the first time on appeal.

■ SDCL 15–6–52(a) provides in part:

Any action or decision of the court in making or modifying findings of fact or conclusions of law shall be deemed excepted to, but the failure of the court to make a finding or conclusion on a material issue shall not be deemed excepted to unless such finding or conclusion has been proposed to or requested from the court.

SDCL 15–6–52(a) also provides that the prevailing party shall prepare, serve and submit proposed written findings of fact and conclusions of law to the court and opposing counsel which the court shall not sign prior to the expiration of five days after service of the proposed findings. The State did not, however, serve M.C. with the findings of fact and conclusions of law until they were signed and filed. M.C. was unable to timely object or propose findings because the State failed to comply with SDCL 15–6–52(a). Therefore, her failure will not prevent her from raising these issues on appeal.

■ 25 U.S.C. § 1911(b) (1989) provides in part:

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, *in the absence of good cause to the contrary,* shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe[.] (Emphasis added.)

"[T]ransfer to the jurisdiction of the tribe is mandatory in the absence of good cause to the contrary." *Chester Cnty. Dept. of*

Social Servs. v. Coleman, 296 S.C. 355, 372 S.E.2d 912, 914 (Ct.App.1988).[2]

Federal guidelines interpreting the Act define "good cause to the contrary" as including, but not limited to cases where (1) the proceeding is at an advanced stage when the petition to transfer is received and the petition is not promptly filed after receipt of notice; (2) the Indian child is over the age of twelve and objects to the transfer; (3) evidence necessary to decide the case cannot be adequately presented to the tribal court without undue hardship to witnesses and parties; (4) the parents of an Indian child over the age of five are not available and the child has had little or no contact with the child's tribe or members of the child's tribe.... Case law also suggests that "good cause to the contrary" includes the absence of a tribal mechanism for handling child custody matters. The burden of establishing good cause to the contrary is on the party opposing transfer. The third element of the guidelines has been applied to deny transfer due to considerations of *forum non conveniens,* such as availability of witnesses and access to proof.

*Coleman,* 372 S.E.2d at 914–15 (citations omitted). *See also State ex rel. J.J.,* 454 N.W.2d 317, 328–331 (S.D.1990).

■ M.C. was entitled to an evidentiary hearing to establish good cause not to transfer jurisdiction to the Tribe. "[U]nder the Indian Child Welfare Act, a jurisdictional hearing is required before the court can enter an order either granting or denying a request for the transfer of jurisdiction of Indian children to tribal custody. Such a hearing is required whenever the Indian children live outside of a reservation." *In re G.L.O.C.,* 205 Mont. 352, 668 P.2d 235, 237 (1983). While the trial court did conduct a hearing on the Tribe's motion to transfer, it was perfunctory, at best. M.C.

2. Section 1911(b) [of the Indian Child Welfare Act] ... creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation: on petition of either parent or the tribe, state-court proceedings for foster care placement or termination of parental rights are to be transferred to the tribal court, except in cases of "good cause," objection by either parent, or declination of jurisdiction by the tribal court. *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 36, 109 S.Ct. 1597, 1601–02, 104 L.Ed.2d 29, 38–39 (1989).

was not provided with adequate notice or an opportunity to be heard.

Late in the work day on June 29, 1992, the trial court scheduled a hearing on the Tribe's motion to transfer for 8:15 the following morning. At that hearing, M.C. requested that the court wait to make a determination regarding transfer until it had listened to the evidence which would establish "good cause to the contrary" at the adjudication hearing which was scheduled for the following day. According to M.C., she was prepared to present testimony at the adjudication hearing which would address her particular medical needs as a result of the burns she had sustained and the Tribe's lack of a sufficient plan to accommodate these needs. The trial court granted the motion to transfer without conducting an evidentiary hearing and entered Findings of Fact and Conclusions of Law which simply state that "[t]he Motion to Transfer by the Rosebud Sioux Tribe is in a timely manner," and "the matter is transferred to the Rosebud Sioux Tribe" because there is "no good cause to the contrary."

As in *Coleman*, the record is void of any indication that the circuit court considered the various factors which may constitute "good cause" not to transfer jurisdiction to the Tribe. 372 S.E.2d at 915. This was error. *See J.J.*, 454 N.W.2d at 329–30. (While on appeal to this court, Tribe filed a motion to intervene and requested transfer of the matter to tribal court. This court remanded the case to the trial court for an evidentiary hearing on the motion. On appeal, this court was able to determine whether the trial court erred in denying transfer, in part, because "[a]fter an evidentiary hearing on the remand, the trial court entered detailed findings of fact and conclusions of law" which supported its conclusion that "good cause to the contrary does exist to deny the transfer." *Id.* at 328–31.)

We reverse and remand for an evidentiary hearing on the issue of good cause. "In deciding if 'good cause to the contrary' exists or not, the [trial] court should make specific findings on the factors outlined above." *Coleman*, 372 S.E.2d at 915. *See also J.J.*, 454 N.W.2d at 328–30.

M.C. argues that her substantive due process rights were denied when the trial court denied her motion to stay its transfer order. M.C. claims no mechanism exists to transfer a case from tribal court to state court. At the hearing on the request for a stay, the Tribe, through its counsel, assured the trial court that if the transfer was reversed, the Tribe would transfer the case back to state court. In view of this assurance, we will reach this issue if and when required.

WUEST and AMUNDSON, JJ., concur.

MILLER, C.J., and HENDERSON, J., dissent.

HENDERSON, Justice (dissenting).

I respectfully dissent. Here, the Honorable John Konenkamp, Circuit Judge, transferred jurisdiction to the Rosebud Tribal Court. In my opinion, the decision of the trial court should be affirmed, not reversed, because the child was not denied any substantive due process.

Set forth, in toto, in the majority opinion, is the pertinent statute, 25 U.S.C. § 1911(b). There is no reason to repeat it.

Pertinent facts:
- May 4, 1992, Rosebud Sioux Tribe motions to intervene.
- Judge Konenkamp is assigned to the case and an advisory hearing is scheduled for May 21, 1992.
- R.W., mother, denies allegations of the formal complaint.
- On May 21, 1992, the Rosebud Sioux Tribe's motion to intervene is granted. An adjudicatory hearing is set for July 1, 1992.
- Pending this hearing, the Rosebud Sioux Tribe motioned, on June 26, 1992, to transfer the case to the Rosebud Sioux Tribal Court.
- IMPORTANT PROCEDURAL FACT: A hearing was set for June 30, 1992; thereat, *the State and the child presented various arguments in oppos-*

*ing the motion to transfer.* Rosebud Sioux Tribe presented its plans to Judge Konenkamp. These plans were deemed acceptable by the trial court.

● On June 30, 1992 (after this hearing), these arguments were denied on the merits; the motion to transfer to the Rosebud Sioux Tribe was granted on June 30, 1992.

There was no failure to afford due process. The Circuit Judge entered Findings of Fact and Conclusions of Law. Under the *Hobelsberger* rule, *Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970), announced many times in this Court, the Findings of Fact were not clearly erroneous; nor were the Conclusions of Law "mistakes of law" under the oft-repeated *Permann* rule. *Permann v. Dept. of Labor, Unemp. Ins. D.*, 411 N.W.2d 113 (S.D. 1987).

Under the controlling federal statute, Judge Konenkamp decided there was not good cause to deny the transfer. This was after all, an Indian child, with an Indian mother, and the transfer was to the Rosebud Sioux Tribe. We are involved with the Indian Child Welfare Act. The lower court's ruling seems to be an outrage to the child's counsel because of a perceived procedural flaw. I do not view it that way.

Nor do I agree with appellate counsel, per page 14 of appellant's brief that "[Judge Konenkamp] decided the transfer and stay motions based on what he [Judge Konenkamp] perceived to be the politically correct decision." Nor do I agree that "Issues of trust and confidence in the Intervenor [Rosebud Sioux Tribal Court] are irrelevant on the motion for stay and only tangentially relevant on the motion for transfer," as expressed by child's brief. Respect of Indian courts by State courts and State courts by Indian courts are an absolute requirement for the understanding and resolution of legal questions confronting the two races. It is a legitimate goal. A system of mutual respect is vital to civil tranquility, stability, and law.

Finally, I call attention to the Bureau of Indian Affairs guidelines, which were developed from the aforesaid federal act.

These guidelines are interpretive and nonbinding. *See Matter of A.L.*, 442 N.W.2d 233 (S.D.1989). They were intended to act as "guidelines" for state courts—not absolute laws. Regarding the verbiage on the federal statute on "good cause to the contrary," please note that those regulations mention the presentation of "views." No question about it: *Both* parties in this case had the opportunity to present their views. At 44 Fed.Reg. 67591 we find these words:

> ... if the court believes or any party asserts that good cause to the contrary exists, the reasons for such belief or assertion shall be in writing and made available to the parties who are petitioning for transfer. The petitioners shall have the opportunity to provide the court with their views on whether or not good cause to deny the transfer exists.

Again, the word "views" is expressed on the same page thereof as follows:

> ... where it is proposed to deny transfer on the grounds of 'good cause', however, all parties need an opportunity to present their views to the court.

It is undisputed that child had that opportunity and did present views and arguments. These were considered by Judge Konenkamp and rejected. In civil cases, due process requires an *opportunity* for a hearing on the merits granted at a meaningful time in a meaningful manner. An *actual* hearing on the merits is not required by the Constitution. *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Northwest S.D. Production Credit v. Dale*, 361 N.W.2d 275 (S.D.1985).

I am authorized to state that Chief Justice MILLER joins this dissent.