719 So.2d 194 (1998)
Ex parte ALABAMA DEPARTMENT OF HUMAN RESOURCES.
(In re Patricia HARRIS v. LIBERTY NATIONAL LIFE INSURANCE COMPANY).
1962164.
Supreme Court of Alabama.
May 29, 1998.
*196 J. Coleman Campbell and James E. Long, asst. attys. gen., Department of Human Resources, for petitioner.
Robert H. Rutherford and David A. Elliott of Burr & Forman, L.L.P., Birmingham, for respondent.
LYONS, Justice.
The Alabama Department of Human Resources ("DHR") petitions this Court for relief from a discovery order. Although DHR has styled its petition to this Court as a petition for a writ of certiorari to the Court of Civil Appeals, we believe it is more appropriate to treat the petition as one for a writ of mandamus directed to the circuit court.
In March 1996, Patricia Harris sued Liberty National Life Insurance Company, stating fraud claims and other claims related to her exchange of one type of Liberty National cancer insurance policy for another type of Liberty National cancer insurance policy. Harris alleged that she was receiving Medicaid benefits when she purchased the policies. Under Alabama's Medicaid statute, Ala.Code 1975, § 22-6-6.1, the benefits from such policies owned by a Medicaid recipient are assigned to the State to the extent the policy benefits duplicate Medicaid coverage. One of Harris's claims is that § 22-6-6.1 has the effect of making the cancer insurance policies worthless to her and that Liberty National fraudulently failed to disclose that fact to her even though it was aware that she was a Medicaid beneficiary. She filed her complaint on her behalf and on behalf of a putative class of similarly situated Liberty National customers in Alabama.
In defense of this lawsuit, Liberty National subpoenaed the custodian of records at DHR, a nonparty, to appear at trial and to produce the following documents:
"Any and all documents in your possession or under your control regarding Patricia C. Harris, ... and or Daryll Harris,... including, but not limited to:
"1) any documents relating to applications of Patricia C. Harris or Daryll Harris for AFDC [Aid to Families with Dependent Children] or Medicaid benefits,
"2) any documents reflecting any applications or claims filed by Patricia C. Harris or Daryll Harris for payment under AFDC or Medicaid,
"3) any documents reflecting payments to Patricia C. Harris or Daryll Harris for payment under AFDC or Medicaid benefits,
"4) any documents reflecting the eligibility of Patricia C. Harris or Daryll Harris for AFDC or Medicaid benefits or coverage, [and]
"5) any documents, including correspondence and questionnaires, sent to you by Patricia C. Harris or Daryll Harris."
Liberty National contended that Harris received Medicaid coverage as a part of the Aid to Families with Dependent Children ("AFDC") benefit package and that the DHR records would show that she had signed a statement assigning all her insurance rights to Medicaid as a condition of eligibility. Liberty National asked the trial court to order DHR to produce the entirety of its file on Harris who, Liberty National said, had not objected to production of the DHR documents.
DHR responded by moving the trial court for a protective order. DHR asserted that the documents sought by Liberty National were confidential and were protected from discovery by Ala.Code 1975, § 38-2-6(8). DHR argued that Liberty National did not have a legitimate need for all the information it sought, and it requested the trial court to quash the subpoena or to modify the subpoena in order for the trial court to perform an in camera inspection of the documents so that only limited information would be disclosed to Liberty National.
In June 1997, Judge Edward Ramsey of the Jefferson Circuit Court entered the following order:
"ORDERED that DHR allow Plaintiff's [Harris's] counsel to review the AFDC and Medicaid records subpoenaed by defendant and thereafter advise the Court whether Plaintiff has any objection to disclosure *197 of said records to Defendant. If no objection is made, DHR is ORDERED to allow inspection and copying of the documents requested. In that event, Defendant is ORDERED to pay DHR for the cost of production of the documents. If any objection is made, the Court shall resolve the matter by further order."
DHR then petitioned the Court of Civil Appeals for a writ of mandamus directing Judge Ramsey to quash or modify Liberty National's subpoena for DHR records. The Court of Civil Appeals denied the mandamus petition, without opinion. Ex parte Alabama Dep't of Human Resources, (No. 2961223) ___ So.2d ___ (Ala.Civ.App.1997) (table). DHR has now petitioned this Court for a writ of mandamus. See Rule 21, Ala. R.App. P.

I.
A writ of mandamus will be issued only if there is: "1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court." Ex parte United Service Stations, Inc., 628 So.2d 501, 503 (Ala.1993). A trial court is vested with broad discretion to control discovery, and its ruling on discovery matters will not be reversed absent a clear abuse of discretion. Ex parte Wal-Mart Stores, Inc., 682 So.2d 65 (Ala.1996). A mandamus petition is a proper means of review to determine whether a trial court has abused its discretion in discovery matters. Ex parte Life Ins. Co. of Georgia, 663 So.2d 929 (Ala.1995). Thus, if DHR has a "clear legal right" to withhold the documents requested by Liberty National, then the trial court abused its discretion in ordering their production and we will grant the petition for the writ of mandamus.

II.
We must determine the effect of Ala.Code 1975, § 38-2-6(8), on Liberty National's subpoena for DHR records. Section 38-2-6 states:
"The aim of the state department shall be the promotion of a unified development of welfare activities and agencies of the state and of the local governments so that each agency and each governmental institution shall function as an integral part of a general system. In order to carry out effectively these aims, it shall be the duty and responsibility of the state department to:
"....
"(8) Establish and enforce reasonable rules and regulations governing the custody, use, and preservation of the records, papers, files, and communications of the state and county departments. The use of such records, papers, files, and communications by any other agency or department of government shall be limited to the purposes for which they are furnished and by the provisions of the law under which they may be furnished. All case records of recipients of, and applicants for, assistance, including, but not limited to, payments and services, shall be considered confidential and not public writings and shall not be subject to public use or inspection. At each session of the circuit court, however, the director of human resources in each county shall, upon request, submit to the grand jury a list of persons receiving public assistance in the county or division of the county covered by the court, and the grand jury may examine the list of public assistance recipients within the county and make such investigation in regard thereto as may be necessary to verify the accuracy of the same. It shall be the duty of the presiding judge to charge the grand jury at each session that it may make such investigation. The information obtained from either the state or county departments of human resources by the grand juries in investigations shall be subject to the same safeguards with respect to the confidential nature of such information as prevails with respect to such records and information while in the custody of the county or state departments of human resources. Confidential information concerning children and their families and applicants for and recipients of public assistance, including, but not limited to, *198 payments or services, shall not be used or disclosed for any purposes not directly connected with the administration of public assistance, or the investigation thereof by grand juries. Any violation of this provision shall be a misdemeanor and punishable accordingly."
(Emphasis added.) In addition, certain DHR rules specifically relate to the discovery of DHR records. Section 660-1-6-.03 of the Rules of the Department of Human Resources states:
"660-1-6-.03 Cases Not Referred by the Department.

"(1) Where a case has not been referred to the Attorney General or a District Attorney or an approved Department attorney by the Department, disclosure and release of records and other confidential information shall be allowed only upon receipt of an Alabama subpoena or a subpoena duces tecum (a subpoena to produce documents) issued by either the Attorney General, District Attorney, a grand jury, or a court of law. The Subpoena or subpoena duces tecum shall name the person whose records are sought and only those records named in the subpoena shall be released. Subpoenas are sufficient authority to release records and other confidential information in fraud cases involving programs administered by the department being investigated by the Attorney General, a District Attorney, a grand jury, or other law enforcement officials. Subpoenas issued in cases not referred by the Department or not involving program-related fraud investigations shall be resisted by apprising the Court of the relevant law and asking for a judicial determination or by filing a motion for a protective order. Subpoenas issued by law courts outside Alabama, ecclesiastical courts or by agencies or other administrative bodies shall also be resisted by refusal to disclose or release the requested information without a competent Alabama or federal court order."
(Emphasis added.)

A.
DHR argues that because its benefits and service records are made confidential by § 38-2-6(8), Rule 45, Ala.R.Civ.P., prohibits their disclosure, unless an exception applies.[1] DHR says that no waiver or statutory exception applies to the records at issue, but it acknowledges that the constitutional principle of due process creates an exception as to certain limited information in its records that it admits may be material to the issues in litigation. DHR contends that the trial court erred in issuing a subpoena that, DHR says, is much broader than what the law allows. It says that Liberty National initially stated that it was seeking a subrogation statement signed by Harris when she applied to DHR for Medicaid and AFDC benefits. DHR says that thereafter Liberty National claimed it needed to see DHR's entire record on Harris because the record might contain information that would aid Liberty National's defense of Harris's lawsuit. DHR contends that Liberty National simply wants its entire record on Harris for a "fishing expedition," and, DHR says, that is exactly what § 38-2-6(8) was intended to prevent.
DHR argues that the trial court, in ordering that the records be made available to Liberty National after Harris had inspected them and determined whether she objected to the release of any confidential information, failed to recognize that the statutory privilege created by the legislature belongs to DHR and not Harris. It claims that Harris cannot waive the privilege at issue because, DHR says, the privilege is intended to protect much more than Harris's own privacy. DHR says the privilege created by § 38-2-6(8) is critical to effectively continuing the State's public assistance program. It makes the following argument in its brief to this Court:
*199 "Public assistance in the nature of aid to families with dependent children is intended for the support of dependent children in the household. See, Code of Alabama 1975, § 38-4-1(d). Upon receiving an application for assistance:
"`An investigation and record shall be promptly made by the county department of the circumstances of the applicant. Upon the completion of the investigation the county director shall determine whether the applicant is eligible for assistance under the provisions of this chapter and the rules and regulations of the state department and the amount of assistance he shall receive.'
"Code of Alabama 1975, § 38-4-2(a). Section 38-4-1(d) requires that an investigation look into income and resource issues as well as child dependency and need issues. Such a broad investigation requirement necessarily requires DHR to obtain a lot of information from sources other than the household. Income and resource information from employers, banks, and a myriad of governmental agencies, such as the Social Security Administration and the Alabama Department of Industrial Relations and local probate offices, may indeed be included in the files. Health and medical records to establish need and dependency may also be included in the files. Furthermore, verification of circumstances information through confidential interviews and documents from others in the community, are also included in the files.
"A privilege to waive access to DHR public assistance information should not be given to recipients of public assistance. To do so would have a chilling effect on DHR's ability to investigate applications and allegations of fraud in the receipt of public assistance. The myriad of sources which provide information to DHR would become more hesitant to provide such information if they [knew] that the applicant [could] simply walk into the DHR office and see everything they stated and provided to DHR. For these very same reasons, contrary to the assertions of Liberty National, DHR has a valid reason for objecting to any attempt by Plaintiff to legitimate access to the files."
DHR asks that the trial court be ordered to modify its subpoena so as to limit the documents DHR must make available to Liberty National, either by making a ruling based on the arguments as to the information needed in light of the claims in the case, or based on an in camera inspection of the records.

B.
In response, Liberty National first argues that it needs all the documents in DHR's file on Harris in order to defend itself against Harris's lawsuit. Liberty National argues that the DHR records could reveal, in addition to possible subrogation agreements, that Harris went off Medicaid at some point or that she was never entitled to Medicaid benefits. Liberty National contends that it must be able to review all of DHR's records on Harris because, it says, it is unable to determine what documents it needs to defend the lawsuit until it has had the opportunity to review them all.
Liberty National argues that the purpose of § 38-2-6(8) is to protect the rights of persons such as Harris, not DHR. It contends that it is Harris and not DHR who has the right to waive the privilege. Liberty National claims that Harris has impliedly waived the privilege because, it says, she did not object to the subpoena to DHR or to the trial court's order denying DHR's motion to quash the subpoena. Thus, Liberty National says that DHR has no basis on which to object to the production of its records on Harris. Moreover, Liberty National says that the trial court's order requiring Harris to review the records and to advise the court if she has an objection to producing any part thereof, provides the same protection as the in camera trial court review DHR seeks.
Liberty National also argues that Rule 45(c)(3)(A)(iii), Ala. R. Civ. P., does not protect DHR from releasing its entire file on Harris because, it says, Rule 45 notes that exceptions can apply. Liberty National says that exceptions exist in DHR's own rules, *200 particularly in § 660-1-6-.03(2)(a) and (b).[2] Liberty National says that in light of these rules, which DHR drafted, DHR's mandamus petition has no merit.

III.
The relevant portion of § 38-2-6(8), creating a statutory privilege for confidential information in DHR records, states:
"Confidential information concerning children and their families and applicants for and recipients of public assistance, including, but not limited to, payments or services, shall not be used or disclosed for any purposes not directly connected with the administration of public assistance, or the investigation thereof by grand juries."
We conclude that this clear language expresses an intent by the legislature to prohibit disclosure of confidential information contained in DHR files in cases that are not subject to an investigation by the State of a person's receipt of public assistance. Moreover, the language of § 38-2-6(8) does not indicate that the legislature intended to give DHR or any person the ability to waive that prohibition of disclosure. Thus, the trial court erred when it ordered DHR to produce to Liberty National its entire file on Harris, subject to Harris's reviewing the file and advising the court of any objections she might have to production of the documents.
The remaining issue is what is meant by the term "confidential information." The legislature did not intend that every document in DHR's files should be shielded from disclosure; Section 38-2-6(8) contemplates "the use of such records, papers, files, and communications by any other agency or department of government" and then provides for limitations on such use. DHR also anticipates such disclosure, as is evident from § 660-1-6-.03(2) of the DHR rules; this section provides an exception allowing disclosure of DHR records and other confidential information in litigation such as this, upon order of the court.
Section 38-2-6(8) refers to "[c]onfidential information concerning children and their families and applicants for and recipients of public assistance, including, but not limited to, payments or services," and it prohibits the use of such information except in circumstances not here presented. We do not find an intrusion into "[c]onfidential information concerning ... payments or services" by allowing Liberty National to discover any subrogation agreements signed by Harris, information specifically relating to whether Harris was ever "off" Medicaid, and other similar information relating to her status as a Medicaid beneficiary. Section 38-2-6 states the "aim of the state department" as "the promotion of a unified development of welfare activities." We see no frustration of this goal by allowing disclosure of DHR records going directly to the question of the standing of a participant in the AFDC program to assert fraud claims as a representative of a class in an action against an insurance carrier.
In sum, we believe that § 38-2-6(8), when interpreted in hand with Rule 45(c)(3)(A)(iii), Ala. R. Civ. P., prohibits the wholesale discovery of DHR records by Liberty National. However, because the legislature properly recognized that not all DHR records are confidential and, in so doing, harmonized the statute with the right to due process protected by § 6, Ala. Const. of 1901, we recognize that certain records are available to Liberty National so that it may adequately defend itself in Harris's action. Any subrogation agreements signed by Harris, information specifically relating to whether Harris was ever "off" Medicaid, and other similar information relating to her status as a Medicaid beneficiary are appropriate matters for disclosure. We believe that the trial court is in the best position to determine what documents in DHR's records on Harris are truly needed by Liberty National in order to defend itself in Harris's lawsuit. In sum, we conclude that DHR has a clear legal *201 right to the relief it seeks and we grant DHR's petition for the writ of mandamus. We direct Judge Ramsey to conduct an in camera inspection of DHR's file on Harris, and to allow Liberty National discovery of those documents, redacted if necessary, that contain information relevant and material to Liberty National's defense of Harris's lawsuit.
WRIT GRANTED.
HOOPER, C.J., and MADDOX, ALMON, HOUSTON, KENNEDY, and COOK, JJ., concur.
SEE, J., concurs in the result.
SHORES, J., recuses herself.
NOTES
[1] Rule 45(c)(3)(A), Ala. R. Civ. P., states:

"On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
"....
"(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies...."
[2] Section 660-1-6-.03 states:

"(2) Notwithstanding 660-1-6-.03(1) above, disclosure and release of departmental records or other confidential information in cases not referred by the Department may be allowed:
"(a) Upon an order of a court of competent jurisdiction.
"(b) As part of ongoing court litigation."