946 So.2d 880 (2006)
Ex parte C.L.J., a minor child, by and through her guardian ad litem.
(In re C.L.J., a minor child).
2050367.
Court of Civil Appeals of Alabama.
June 23, 2006.
*882 Jacob A. Dubin of Keith & Hamm, P.C., Montgomery, for petitioners S.R. and B.R.
Aimee C. Smith, guardian ad litem, Montgomery.
Troy King, atty. gen., and Felicia M. Brooks, asst. atty. gen., Department of Human Resources, for petitioners.
Larry R. Sasser, Montgomery; and Robert L. Turner, Montgomery, for respondent E.J.
Jan Schroeder Grant, Montgomery, for respondent M.J.
R. Autin Huffaker, Jr., of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery; and J. Lisa Impson of the Chickasaw Nation Division of Justice, Ada, Oklahoma, for respondent the Chickasaw Nation.

On Application for Rehearing
THOMPSON, Judge.
In April 2003, the Department of Human Resources ("DHR") removed C.L.J. ("the child") from the custody of her mother, E.J., and placed her in protective custody. At or near that time, the Montgomery Juvenile Court awarded DHR custody of the child. The child, who was almost 3 years old when she was taken into protective custody, has remained in the same foster-care placement with S.R. and B.R. ("the foster parents").
*883 On September 9, 2004, approximately 16 months after the child had been taken into protective custody, the child's maternal great aunt, M.J. ("the great aunt"), filed a petition in this matter alleging that the child was dependent and seeking custody of the child. In her petition, the great aunt stated that she anticipated that DHR would soon seek to terminate the mother's parental rights to the child.
On February 3, 2005, the Chickasaw Nation[1] moved to intervene in the action, alleging that the child is an "Indian Child," as that term is defined in § 1903 of the Indian Child Welfare Act ("the ICWA"), 25 U.S.C. §§ 1901 through -1963, and that the ICWA granted it the right to intervene in the action involving the child. See 25 U.S.C. § 1911(c). It does not appear that the juvenile court was informed that the child might be an "Indian child" under the ICWA before the Chickasaw Nation filed its motion to intervene. In support of its motion to intervene, the Chickasaw Nation submitted a memorandum stating that the mother was "65/256 Chickasaw/Choctaw"; the Chickasaw Nation later alleged that the child was eligible for membership in the Chickasaw Nation.
On February 8, 2005, the mother filed a motion seeking to transfer this action to the Chickasaw Nation tribal court pursuant to the ICWA. DHR, the foster parents, and the child's guardian ad litem all filed objections to the motion to transfer the case to the tribal court; the Chickasaw Nation filed a brief in support of the mother's motion to transfer. The child, who was born on July 11, 1999, was five and a half years old at the time the Chickasaw Nation intervened in this matter and the mother moved to transfer the case to the tribal court.
On March 29, 2005, B.R., the foster mother, petitioned for custody of the child. On April 15, 2005, DHR moved to terminate the parental rights of the mother and of K.J., the child's alleged father.[2] Later, the foster parents filed a motion to amend B.R.'s petition for custody, seeking to "adopt" DHR's petition to terminate the parents' parental rights; the juvenile court granted the foster parents' motion.[3]
On August 4, 2005, the juvenile court entered an order denying the mother's motion to transfer the case to the tribal court. In that order, the juvenile court made a number of factual findings and legal determinations, including the determination that the ICWA applied to the facts of this case. Neither the mother nor the Chickasaw Nation sought appellate review of that order.
In December 2005 and January 2006, the parties submitted witness lists to the juvenile court. The great aunt filed on January 12, 2006, a motion seeking a status conference "to schedule trial witnesses." According to the guardian ad litem's filing in this court, the juvenile court scheduled a hearing for a scheduling conference for February 3, 2006. However, on January 26, 2006, the juvenile court entered an order canceling the hearing *884 scheduled for February 3, 2006, and transferring this action to the tribal court.
On February 1, 2006, the guardian ad litem filed a document entitled "Objection to Order Transferring Case to Tribal Court." In that filing, the guardian ad litem argued that the juvenile court had erred in ordering that the case be transferred to the tribal court; the guardian ad litem made a number of factual allegations to support that argument and requested that the juvenile court conduct a hearing on the motion. In substance, the guardian ad litem's February 1, 2006, filing was a postjudgment motion filed pursuant to Rule 59, Ala. R. Civ. P.; therefore, we construe that filing as a postjudgment motion filed pursuant to that rule.[4]Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 562-63 (Ala.2005) ("This Court will look at the substance of a motion, rather than its title, to determine how that motion is to be considered under the Alabama Rules of Civil Procedure."). On February 2, 2006, the juvenile court denied the guardian ad litem's February 1, 2006, postjudgment motion by entering a notation on that motion that stated, "objection noted and denied."
On February 7, 2006, the guardian ad litem filed in this court a motion for an emergency stay of the juvenile court's January 26, 2006, order and a "petition for a writ of mandamus" seeking an order directing the juvenile court to rescind its order transferring the action to the tribal court. On March 7, 2006, this court, in a two sentence order, granted the guardian ad litem's "petition for a writ of mandamus" and directed the juvenile court to rescind its January 26, 2006, order. ____ So.2d ____ (table). The Chickasaw Nation filed in this court an application for rehearing in which it requested that this court clarify the March 7, 2006, order by setting forth the basis on which it was entered. We grant the application for rehearing, and we reverse the order of the juvenile court and remand the cause with instructions.
As an initial matter, we address the purpose of the ICWA and the application of that act in a state court.
"The ICWA was enacted to promote the stability and security of Indian tribes and families through the establishment of minimum federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.
"When Congress enacted the ICWA, it had two main goals: (1) protecting the best interests of the Indian children and (2) promoting the stability and security of Indian tribes and families. See 25 U.S.C. § 1902. The act is based on the assumption that protection of the Indian child's relationship to the tribe is in the child's best interests. Mississippi Choctaw Indian Band v. Holyfield, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989).
"ICWA § 1911 mandates that the Indian tribe have jurisdiction in all child custody proceedings `involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law.' The ICWA does not, however, divest state courts of their jurisdiction over children of Indian descent living off *885 the reservation. Kiowa Tribe of Oklahoma v. Lewis, 777 F.2d 587 (10th Cir. 1985), cert. denied 479 U.S. 872, 107 S.Ct. 247, 93 L.Ed.2d 171 (1986). State courts may exercise jurisdiction concurrently with the tribal courts in regard to those Indian children who do not reside and are not domiciled on their tribe's reservation; however, a state court must refer the matter to a tribal court unless good cause is shown for the retention of state court jurisdiction. See 25 U.S.C. § 1911(b).
". . . .
"That a state court may take jurisdiction does not necessarily mean that it should do so, as the court should consider the rights of the child, the rights of the tribe, and the conflict of law principles, and should balance the interests of the state and the tribe. See Application of Bertelson, 189 Mont. 524, 617 P.2d 121 (1980)."
In re C.W., 239 Neb. 817, 825-26, 479 N.W.2d 105, 112-13 (1992) (emphasis added).
In In re C.W., supra, the Nebraska Supreme Court went on to discuss the federal guidelines pertaining to whether good cause exists for a state court to retain jurisdiction rather than transfer the matter to a tribal court:
"The Bureau of Indian Affairs has published nonbinding federal guidelines interpreting the ICWA's definition of `good cause to the contrary' as including, but not limited to, cases where (1) the proceeding is at an advanced stage when the petition to transfer is received, and the petition is not promptly filed after receipt of notice; (2) the Indian child is over the age of 12 and objects to the transfer; (3) evidence necessary to decide the case cannot be adequately presented to the tribal court without undue hardship to the witnesses and parties; and (4) the parents of an Indian child over the age of 5 are not available, and the child has had little or no contact with the child's tribe or members of the child's tribe. Additionally, the guidelines specify that socioeconomic conditions and the perceived adequacy of tribal or Bureau of Indian Affairs social services or judicial systems may not be considered in determining whether good cause exists. The burden of establishing good cause shall be on the party opposing the transfer. Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,584, 67,591 (1979) (not codified).
"The third element of the guidelines has been applied to deny transfer due to considerations of forum non conveniens, such as availability of witnesses and access to proof. See In Interest of J.R.H., 358 N.W.2d 311 (Iowa 1984). . . . "
239 Neb. at 826-27, 479 N.W.2d at 113 (emphasis added).
The juvenile court's August 4, 2005, order denying the mother's motion to transfer contained the following factual findings and legal conclusions:
"The Chickasaw Nation's [February 3, 2005,] intervention apparently was delayed due to the mother's failure to inform her attorney that she was a member of the Choctaw and Chickasaw tribes. [DHR's] brief states that counsel for the mother submitted a letter to DHR on July 12, 2004, indicating that she wished for placement of her child to be with her relatives in Oklahoma. DHR's brief further states that counsel for the mother did not inform DHR until on or about November 3, 2004, that the mother [had] established membership with the Choctaw and Chickasaw tribes.
"The Chickasaw Nation filed a motion to intervene shortly after receiving notice of the present proceeding as required *886 by the ICWA. The Indian tribe of an Indian child who is eligible for membership within the federally recognized Indian tribe has a right to intervene at any point in the proceeding. (See 25 U.S.C. § 1911(c).) A motion to transfer this case to the tribal court was filed shortly thereafter.
"The Court notes that the ICWA does not preempt state court proceedings in all cases. The Alabama Court of Civil Appeals, in R.B. v. State Department of Human Resources, 669 So.2d 187 (Ala. Civ.App.1995), held that the ICWA did not divest the state courts of their jurisdiction over children of Indian descent who do not live on a reservation. The child in the present case has not lived on a reservation. State courts may exercise jurisdiction concurrently with tribal courts in regard to those Indian children who do not reside and are not domiciled on their tribe's reservation; however, a state court must refer the matter to a tribal court `in the absence of good cause to the contrary' for the retention of state court jurisdiction. See 25 U.S.C. § 1911(b)."
With regard to the issue whether there existed good cause to prevent a transfer of this matter to the tribal court, the juvenile court made the following additional factual findings and conclusions of law in its August 4, 2005, order:
"[In a filing in this court], Counsel for the Chickasaw Nation conceded that `the Nation filed its Motion to Transfer at an advanced stage in the proceeding.' This case began on April 23, 2003, following a petition for pick up order filed by DHR. The child has remained in the legal custody of DHR to date, and the child has remained in the care of foster parents for over two years. The child turned six years old on July 11, 2005.
"DHR's submitted brief and supplemental brief make a case that a significant hardship would ensue for the witnesses should this Court grant a motion to transfer from this Court to the tribal court located in the State of Oklahoma. There are currently three pending petitions, DHR's petition to terminate parental rights, and the petitions for custody filed by the great maternal aunt and the foster parents. Nearly all of the witnesses are within the State of Alabama, the mother's social history as it relates to this case is in Alabama, and the child lives within this State. DHR lists more than twenty-five potential witnesses who reside in close proximity to Montgomery, Alabama.
". . . .
"Upon consideration thereof, it is hereby, ORDERED, ADJUDGED AND DECREED as follows:
"1. That the Indian Child Welfare Act applies to the present case.
"2. That this case is in an advanced stage in the proceeding.
"3. That the evidence necessary to decide the case cannot be adequately presented to the tribal court without undue hardship to the witnesses and parties.
"4. That in accordance with the ICWA this Court does find good cause to the contrary to deny the motion to transfer to the tribal court.
"5. That in the child's best interests the Motion to Transfer Case to Tribal Court is hereby DENIED."
In its January 26, 2006, order transferring this action to the tribal court, the juvenile court addressed only one of the factors pertaining to "good cause" that it had addressed in its August 4, 2005, order. Specifically, the juvenile court concluded that because documents had been filed indicating that a number of people listed as *887 potential witnesses by the mother and the Chickasaw Nation would have to travel from Oklahoma to Alabama to testify in this matter, the case should be transferred to the tribal court.[5] The juvenile court did not conduct an ore tenus hearing regarding whether this matter should be transferred to the tribal court before it entered either of its two orders on that issue.
In this court, the guardian ad litem sought a writ of mandamus. A petition for a writ of mandamus is the appropriate method for reviewing an interlocutory order. Ex parte Turpin Vise Ins. Agency, Inc., 705 So.2d 368, 369 (Ala.1997) ("The writ of mandamus is an extraordinary writ that applies `where a party seeks emergency and immediate appellate review of an order that is otherwise interlocutory and not appealable.' Rule 21(e)(4), Ala. R.App. P."). However, the juvenile court's January 26, 2006, order transferred jurisdiction over this matter to the tribal court; thus, after the entry of that order, there was no further action to be taken by the juvenile court with regard to this matter, so that order constituted a final judgment. Wilson v. Wilson, 53 Ala.App. 201, 205, 298 So.2d 622, 625 (Ala.Civ.App.1973) ("nothing remains to be done by the trial court as regards the rights and equities of the parties; consequently the [judgment] is final and supportive of the appeal taken").
Further, an order dismissing an action based on the doctrine of forum non conveniens is appealable. Ex parte Ford Motor Credit Co., 772 So.2d 437, 439 (Ala. 2000). This court has observed that the ICWA allows courts to apply a version of the doctrine of forum non conveniens in determining whether to transfer an action to a tribal court under the ICWA. R.B. v. State Dep't of Human Res., 669 So.2d 187, 189 (Ala.Civ.App.1995). See also In re C.W., 239 Neb. at 827-28, 479 N.W.2d at 113-14 (one element in considering whether to transfer a case to an Indian tribal court is the doctrine of forum non conveniens). The Supreme Court of South Carolina has explained the version of the doctrine of forum non conveniens that is encompassed in the ICWA as follows:
"`Consideration of whether or not the case can be properly tried in tribal court without hardship to the parties or witnesses was included on the strength of the section-by-section analysis in the House Report on the Act, which stated with respect to the § 1911(b), "[t]he subsection is intended to permit a State court to apply a modified doctrine of forum non conveniens, *888 in appropriate cases, to insure that the rights of the child as an Indian, the Indian parents or custodian, and the tribe are fully protected."'
"44 Fed.Reg. at 67591.
"The doctrine of forum non conveniens is modified in the Indian child custody context so as to allow state courts to determine whether the tribal court is a less convenient forum. The [Bureau of Indian Affairs] Guidelines acknowledge that `application of this criterion will tend to limit transfers to cases involving Indian children who do not live very far from the reservation.' 44 Fed. Reg. at 67591."
Chester County Dep't of Soc. Servs. v. Coleman 303 S.C. 226, 230, 399 S.E.2d 773, 775 (1990).
The juvenile court's January 26, 2006, order transferred jurisdiction to the tribal court on the basis of a version of the doctrine of forum non conveniens; therefore, that order constituted a final judgment from which an appeal would lie. Although the guardian ad litem filed in this court a "petition for a writ of mandamus," this court elects to treat the filing as an appeal of the January 26, 2006, order. See Ex parte Woodward, 738 So.2d 322, 323 (Ala.1998) (treating a petition for a writ of mandamus from a preliminary injunction as an appeal); Ex parte Alabama Dep't of Human Res., 719 So.2d 194, 196 (Ala.1998) (treating a filing styled as a petition for a writ of certiorari as a petition for a writ of mandamus); and Ex parte Health Care Mgmt. Group of Camden, Inc., 522 So.2d 280, 281 (Ala.1988) (treating a petition for a writ of mandamus from a preliminary injunction as an appeal of that order).

Whether the ICWA applies to the facts of this case
The guardian ad litem contends in her brief submitted to this court that the ICWA does not apply in this case. The ICWA governs a child-custody proceeding involving an "Indian child." 25 U.S.C. § 1911; In re C.W., supra. In its August 4, 2005, order, the juvenile court found that the ICWA applies in this case because
"the prerequisites have been fulfilled to invoke the ICWA to the present case: the child in question is an Indian child as defined by the ICWA; the Chickasaw Nation verified that the child is eligible for membership into the tribe; the present case is a child-custody proceeding involving foster-care placement of an Indian child [(and, later, a petition for the termination of parental rights to that child)]."
We note that no party has maintained that the child is not an "Indian child" under the ICWA; therefore, this court may not address that issue. Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982) ("When an appellant fails to argue an issue in its brief, that issue is waived."); Gary v. Crouch, 923 So.2d 1130, 1136 (Ala.Civ.App. 2005) ("this court is confined in its review to addressing the arguments raised by the parties in their briefs on appeal; arguments not raised by the parties are waived"); and Brown v. Wal-Mart Stores, Inc., 864 So.2d 1100, 1104 (Ala.Civ.App. 2002) ("We will not reverse a trial court's judgment based . . . on arguments not made to this court."). Instead, the guardian ad litem asserts that the child does not have sufficient contacts with the Chickasaw Nation to justify the application of the ICWA. The guardian ad litem points out, among other things, that the mother did not become affiliated with an Indian tribe until well after the child was removed from her custody and it was clear that DHR would proceed with the termination of her parental rights. The guardian ad litem also points out that the child has had little to no contact with the Chickasaw Nation.
The guardian ad litem cites S.A. v. E.J.P., 571 So.2d 1187, 1190 (Ala.Civ.App. 1990), in support of her argument. In S.A. *889 v. E.J.P., supra, the child was born to a non-Indian mother and a father who was 1/8 Cherokee Indian. The father objected to an adoption petition filed by maternal relatives when the child was approximately four years old. The father argued that the trial court erred in determining that the adoption would be in the child's best interests; he contended that the trial court erred in failing to apply the ICWA. In rejecting that argument, this court recognized the "Existing Indian Family" exception to the applicability of the ICWA. That exception is based upon "the overall concern of the ICWA to [prevent] the unwarranted removal of Indian children from an existing Indian family unit and the resultant breakup of the Indian family." S.A. v. E.J.P., 571 So.2d at 1189. The "Existing Indian Family" exception applies when the child at issue is "illegitimate . . . [and has] never been a member of an Indian family or culture." S.A. v. E.J.P., 571 So.2d at 1189. However, as this court noted in S.A. v. E.J.P., that exception has been applied only "to those fact situations involving the voluntary relinquishment of an illegitimate Indian child by its non-Indian mother." 571 So.2d at 1189.[6]
In this case, the guardian ad litem appears to argue that the "Existing Indian Family" exception to the ICWA should be applied to a case in which the child has had, or is alleged to have had, little contact with the tribe to whom the transfer is sought; in other words, where it is alleged that the child at issue is not a part of "an existing Indian family unit."
Based on evidence presented in this matter, it does not appear that the child at issue has been a part of an Indian family or has been significantly exposed to Indian culture.[7] However, as noted previously, the "Existing Indian Family" exception has been applied only in those situations in which a non-Indian mother relinquishes her child. See S.A. v. E.J.P., supra. In this case, the mother is an Indian, although she has only recently joined the Chickasaw Nation. Given the only argument presented to this court on this issue, we may not extend the "Existing Indian Family" exception to encompass situations in which the child's mother is an Indian but the child is alleged to have had little to no contact with an Indian tribe; therefore, we must conclude that the guardian ad litem has failed to demonstrate that the juvenile court erred in applying the ICWA.

Whether the juvenile court exceeded its discretion in transferring this matter to the tribal court
The guardian ad litem also maintains that the juvenile court exceeded its discretion *890 in transferring jurisdiction of this matter to the tribal court. The guardian ad litem maintains that good cause existed to prevent the transfer. See In re C.W., supra. The guardian ad litem points out that although in its August 4, 2005, order, the juvenile court addressed several of the factors for the consideration of the existence of good cause set forth in the nonbinding federal guidelines, it addressed only one of those factors in reaching its January 26, 2006, order transferring the case. The guardian ad litem argues that the juvenile court should have considered the other factors in reaching its January 26, 2006, decision. The guardian ad litem also maintains that the implicit determination in the juvenile court's January 26, 2006, order that the difficulties facing the long list of proposed Oklahoma witnesses outweigh those of the Alabama witnesses in traveling to Oklahoma is not supported by the record.
As a part of her argument on this issue, the guardian ad litem points out that in this case the juvenile court failed to conduct a hearing on whether good cause existed that might constitute an exception to the general rule that this matter should be transferred to the tribal court.[8] In the other cases evaluated by this court in its consideration of this case, the state trial courts conducted evidentiary hearings to consider the issue of the existence of good cause or received evidence pertaining to that issue in resolving the ultimate issue before the court. See, e.g., In re Wayne R.N., 107 N.M. 341, 757 P.2d 1333 (Ct.App. 1988) (after conducting an evidentiary hearing, the state trial court denied a motion to transfer pursuant to the ICWA, finding good cause for the trial court to retain jurisdiction); In re Brittany C., 13 Neb.App. 411, 693 N.W.2d 592 (2005) (affirming, based on the evidence, the state trial court's decision to deny a motion to transfer when the trial court conducted a hearing on the motion to transfer); and In re Mahaney, 146 Wash.2d 878, 51 P.3d 776 (2002) (the state trial court considered the applicability of the ICWA as part of its hearing on the issue of custody).
In In re C.W., supra, the state trial court terminated the mother's parental rights to her four children, but it transferred the matter to the tribal court of the Indian tribe of which the mother and the children were members for the disposition of the children. On appeal, the Supreme Court of Nebraska rejected the mother's arguments that the entire proceeding should have been transferred to the tribal court, concluding, among other things, that good cause existed to deny the transfer of the entire matter. Among other things, the court concluded:
"In determining whether the doctrine of forum non conveniens should be invoked, the trial court should consider practical factors that make trial of the case easy, expeditious, and inexpensive, such as the relative ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the ability to secure attendance of witnesses through compulsory process."
In re C.W., 239 Neb. at 828, 479 N.W.2d at 113 (citing In re Wayne R.N., supra). In In re C.W., supra, the Nebraska Supreme Court noted that the evidence in that case demonstrated that
"[l]argely by their mother's choice, the children involved in this situation have had little exposure to their Indian culture, and the value of transfer to the tribe with future exposure to the Indian *891 ways of life must be balanced first against the detrimental consequences these children will suffer due to the separation from the psychological parents to whom the children have bonded and become attached. Secondly, we must consider the cultural adjustments that these children, who have not lived in an Indian environment, would have to make and their individual abilities to make those adjustments, as established by the testimony of qualified expert witnesses. See In Interest of J.R.H., 358 N.W.2d 311 (Iowa 1984)."
239 Neb. at 834-35, 479 N.W.2d at 117 (emphasis added). Therefore, after considering the specific facts of that case, the Nebraska Supreme Court concluded that good cause existed for the state trial court to retain jurisdiction of the termination-of-parental rights proceeding.[9]
In In re Wayne R.N., supra, the father was a member of two Indian tribes and the mother was not an Indian. At the beginning of a termination-of-parental-rights proceeding, the parents moved to transfer the matter from the New Mexico trial court to a tribal court in Oklahoma. The trial court conducted a hearing on the issue of the proposed transfer, and it ultimately determined that good cause existed for it to retain jurisdiction. Among other things, the evidence presented to the trial court indicated that the witnesses who could testify regarding the parents' conduct and its effects on the children were in New Mexico; an attorney for the tribes indicated that the tribes opposed the transfer; and the tribes' social worker testified regarding tribal child-rearing customs, which "minimized the danger that the [parents'] rights would be terminated on the basis of conduct that would have been acceptable to the Tribes." In re Wayne R.N., 107 N.M. at 344, 757 P.2d at 1336. The appellate court, relying on the modified version of the doctrine of forum non conveniens found in the guidelines promulgated by the Bureau of Indian Affairs, affirmed the trial court's denial of the motion to transfer, concluding that good cause existed for the trial court to retain jurisdiction of the matter. In re Wayne R.N., supra.
In Chester County Department of Social Services v. Coleman, 296 S.C. 355, 372 S.E.2d 912 (Ct.App.1988),[10] the state trial court, after conducting a placement hearing, ordered that the dependency-type action be transferred to a tribal court; the children appealed the ruling. The Court of Appeals of South Carolina reversed, concluding that the trial court had erred in failing "to consider the various factors which may constitute `good cause' under the [ICWA]." Chester County Dep't of Soc. Servs. v. Coleman, 296 S.C. at 359, 372 S.E.2d at 915. The court stated that
"[w]hat little we are able to glean from the record indicates that a biological parent of the two older girls, both of whom are over five years of age, may be unavailable; that none of the children *892 has had any contact with the tribe or has resided on the reservation for a significant period of time; and that the material witnesses and evidence relating to placement are in South Carolina, not South Dakota. These factors, together with evidence that removal of the children would be disruptive and detrimental to their best interests, may well constitute `good cause' for the family court to retain jurisdiction of the case.
"Because we are unable to make this factual determination on the record before us, we reverse and remand for a [] determination of the issue."
Id.
In this case, the parties dispute whether there exists "good cause" to deny a transfer under the third of the listed, nonbinding guidelines, specifically, whether "evidence necessary to decide the case can[] be adequately presented to the tribal court without undue hardship to witnesses and parties." In re C.W., 239 Neb. at 827, 479 N.W.2d at 113. See also Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,584, 67,591 (1979) (not codified). As already established, that element of the nonbinding federal guidelines creates a modified version of the doctrine of forum non conveniens. With regard to that factor, the mother and the Chickasaw Nation insist in their briefs submitted to this court that the Alabama witnesses are unnecessary before the tribal court. We disagree. The ultimate issues before the juvenile court, or before the tribal court if the matter is transferred to that court, are the resolution of DHR's petition to terminate the mother's parental rights and the two custody petitions filed in this matter. Thus, many, if not all, of the Alabama witnesses will provide evidence material to those issues. See In re Wayne R.N., 107 N.M. at 344, 757 P.2d at 1336 (considering the fact that the witnesses who could testify regarding the parents' actions and the effect of those actions on the children at issue were in New Mexico and not in the same state as the tribal court); and Chester County Dep't of Soc. Servs. v. Coleman, 296 S.C. at 359, 372 S.E.2d at 915 (noting that it appeared that the "material witnesses" were in South Carolina rather than in South Dakota, where the tribal court was located).
The allegations before this court and the juvenile court reflect that the child has had little to no contact with the Chickasaw Nation or with members of the Chickasaw Nation. The mother asserts in her brief before this court that the child "knows" the great aunt, and the Chickasaw Nation asserts that the child "has had contact with and has bonded with her Chickasaw family." However, the guardian ad litem alleged in her postjudgment motion that the child has met the great aunt on only three occasions, all of which were during visitations supervised by DHR. The guardian ad litem also alleges other facts that, if established, would indicate that the child has had little to no contact with the Chickasaw Nation or its members and that the mother and the great aunt had not joined the tribe until just before the Chickasaw Nation intervened in this action.
In this case, it is clear that the juvenile court changed its decision regarding the transfer of this matter to the tribal court "in light of the numerous witnesses and parties who would be required to come from the State of Oklahoma to the State of Alabama." The juvenile court reached its decision based on lists of witnesses submitted by the parties. There is little evidence before this court, and there was little to no evidence before the juvenile court, relevant to the issue whether there is good cause for the juvenile court to retain jurisdiction *893 of the matter rather than to transfer the case to the tribal court.
Some state courts have held that a hearing is required when a party files a motion seeking to transfer a case under the ICWA. See In re G.L.O.C., 205 Mont. 352, 357, 668 P.2d 235, 237 (1983) ("[A] hearing [on a motion to transfer under the ICWA] is required whenever the Indian children live outside of a reservation."); In re Wayne R.N., 107 N.M. at 343, 757 P.2d at 1335 ("Once a petition to transfer a matter to tribal court is filed as contemplated by the [ICWA], the state court must hold a hearing on the petition, and determine whether or not to transfer the matter."); and People in the Interests of M.C., 504 N.W.2d 598 (S.D.1993) (a hearing must be provided in order to allow the parties to be heard on the issue of a potential transfer to a tribal court).
Other jurisdictions, although not specifically stating that a hearing on a motion to transfer is required, have held that the decision whether to transfer is dependent upon the facts of each particular case. "The determination of whether good cause not to transfer the proceedings exists will necessarily be made on a case-by-case basis, after a careful consideration of all the circumstances of the case." In re Wayne R.N., 107 N.M. at 344, 757 P.2d at 1335. See also People in Interest of J.L.P., 870 P.2d 1252, 1256 (Colo.Ct.App. 1994); In re J.W., 528 N.W.2d 657, 660 (Iowa Ct.App.1995) ("Ultimately, the determination whether good cause not to transfer exists is made on a case-by-case basis, after a careful consideration of all the circumstances of the case."); Matter of Dependency and Neglect of A.L., 442 N.W.2d 233, 235 (S.D.1989) (the determination whether a petition to transfer pursuant to the ICWA is timely must be made on a case-by-case basis); and Yavapai-Apache Tribe v. Mejia, 906 S.W.2d 152, 163 (Tex.Ct.App.1995) ("A good cause determination is necessarily made on a case-by-case basis after consideration of all the circumstances involved.").
In this case, the juvenile court ordered that the case be transferred to the tribal court based solely on the witness lists submitted by the mother and the Chickasaw Nation; those witness lists contain names of a significant number of proposed witnesses who are from Oklahoma. There is no indication what, if any, knowledge those witnesses might have regarding the child or the facts of this case. There is no evidence regarding any hardship that any of the prospective witnesses might incur in traveling to another state. In this case, the juvenile court has not taken an opportunity to balance the degree of difficulty of travel between the material witnesses, or the interests of the child, the child's parent, and the Chickasaw Nation. Therefore, we reverse the juvenile court's order transferring the action to the tribal court and remand this matter for the juvenile court to conduct a hearing and receive evidence in compliance with this opinion. See Chester County Dep't of Soc. Servs. v. Coleman, supra.
In so holding, we note that this court has not been asked to define for the purposes of Alabama caselaw the concept of "good cause" under the ICWA. In his special writing, Presiding Judge Crawley, relying on reasoning by the Texas Court of Appeals, advocates disregarding any consideration of the best interests of the child in determining whether to transfer a case to a tribal court under the ICWA. See Yavapai-Apache Tribe v. Mejia, supra; see also In re J.L.P., 870 P.2d 1252, 1258 (Colo.Ct.App.1994); and In re C.E.H., 837 S.W.2d 947, 954 (Mo.Ct.App.1992). We note that a number of jurisdictions take a different approach and consider the best interests of the child, in some form, as one *894 element of a good-cause determination. See In re Maricopa County Juvenile Action No. JS-8287, 171 Ariz. 104, 828 P.2d 1245, 1251 (Ct.App.1991); and In re N.L., 754 P.2d 863, 869 (Okla.1988); see also In re Adoption of S.W., 41 P.3d 1003, 1011 (Okla.Civ.App.2001) (noting that "when the best interests standard is used, care must be taken to avoid a purely Anglo-American point of view" (footnote omitted)). We conclude that, at the current procedural posture of this case, it would be premature for this court to attempt to resolve the issues of how this court might define "good cause" under the ICWA and whether the best interests of the child should, in some form, be considered in deciding whether to transfer a case under the ICWA. Such a determination would be more appropriately made after parties with a stake in such a decision have had an opportunity to advocate their positions to, and have those positions thoroughly considered by, the juvenile court.

Whether the great aunt is an extended family member under the ICWA
The ICWA provides that "in the absence of good cause to the contrary," preference for foster-care placement for an Indian child is with, among others, a member of the Indian child's "extended family" or a foster home approved by the Indian tribe; preference for an adoptive placement of an Indian child under the ICWA is with, among others, a member of the child's "extended family" or other members of the tribe. 25 U.S.C. § 1915(a) and (b); see also In re A.E., 572 N.W.2d 579, 583 (Iowa 1997); and In re C.W., 239 Neb. at 825-26, 479 N.W.2d at 112-13. The guardian ad litem argues that the definition of an "extended family member" contained in the ICWA does not encompass the great aunt. Therefore, she maintains, the great aunt is not a preferred placement for the child under the ICWA and that the great aunt's petition for custody of the child "has no greater weight" than the petition filed by the foster parents.
The juvenile court has not made a determination concerning whether the great aunt is an "extended family member" under the ICWA. Therefore, it is not appropriate for this court to consider that issue. Whether the great aunt fits within the definition of "extended family member" is a question for the juvenile court to resolve following remand.
We reverse the juvenile court's order transferring the action to the tribal court and remand this matter to the juvenile court for it to conduct an evidentiary hearing on the motion to transfer pursuant to the ICWA. Therefore, we pretermit a discussion of the guardian ad litem's argument that the juvenile court erred in refusing to conduct the hearing she requested on her postjudgment motion.
APPLICATION GRANTED; REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, J., concurs.
BRYAN, J., concurs in the rationale in part and concurs in the result, with writing.
CRAWLEY, P.J., concurs in the result, with writing.
MURDOCK, J., concurs in the judgment of reversal only, with writing.
BRYAN, Judge, concurring in the rationale in part and concurring in the result.
I concur with the main opinion as it relates to the applicability of the Indian Child Welfare Act ("the ICWA"), 25 U.S.C. § 1901 et seq. I also concur with the analysis in the main opinion requiring the juvenile court to conduct a hearing and receive evidence as to whether good cause *895 exists to deny the transfer of this case. I conclude that the holding in In re C.W., 239 Neb. 817, 819, 479 N.W.2d 105 (1992), is particularly applicable to the current fact situation as presented to this Court.
"Largely by their mother's choice, the children involved in this situation have had little exposure to their Indian culture, and the value of transfer to the tribe with future exposure to the Indian ways of life must be balanced first against the detrimental consequences these children will suffer due to the separation from the psychological parents to whom the children have bonded and become attached. Secondly, we must consider the cultural adjustments that these children, who have not lived in an Indian environment, would have to make and their individual abilities to make those adjustments, as established by the testimony of qualified expert witnesses. See In Interest of J.R.H., 358 N.W.2d 311 (Iowa 1984)."
239 Neb. at 834-35, 479 N.W.2d at 117 (emphasis added). Thus, I conclude that the juvenile court must consider the principles outlined above in making its decision to transfer or retain jurisdiction of this case.
I agree with the main opinion solely insofar as it determines that the issue whether the great aunt is an "extended family member" under the ICWA is not ripe for appellate review.
CRAWLEY, Presiding Judge, concurring in the result.
I respectfully disagree with the main opinion's reliance on cases that have blurred the line between jurisdictional issues and substantive determinations. More specifically, I disagree with the rationale in the main opinion indicating that a child's "best interests" is a factor to consider when determining whether to transfer jurisdiction to an American Indian tribal court. As noted by the court in Yavapai-Apache Tribe v. Mejia, 906 S.W.2d 152, 168-69 (Tex.Ct.App.1995):
"The `best interest of the child' is the backbone of American family law when custody is an issue. However, we find that consideration of the best interest of the child in determining whether good cause exists under section 1911(b) is improper because: (1) it defeats the very purpose for which the ICWA was enacted, in that, it allows Anglo cultural biases into the analysis; and (2) questions of `best interest' are appropriate to issues of placement, not jurisdiction."
(Citations and footnote omitted.) Ultimately, the Mejia court joined other jurisdiction that have rejected the best-interests standard for determining jurisdiction. Id. (citing In re J.L.P., 870 P.2d 1252, 1258 (Colo.Ct.App.1994); In re Armell, 194 Ill. App.3d 31, 141 Ill.Dec. 14, 550 N.E.2d 1060 (1990), appeal denied, 132 Ill.2d 545, 144 Ill.Dec. 255, 555 N.E.2d 374 (1990), cert. denied, 498 U.S. 940, 111 S.Ct. 345, 112 L.Ed.2d 310 (1990); In re B.W., 454 N.W.2d 437 (Minn.Ct.App.1990); In re C.E.H., 837 S.W.2d 947 (Mo.Ct.App.1992); and In re Ashley Elizabeth R., 116 N.M. 416, 863 P.2d 451 (Ct.App.1993)).
Also, I disagree with the portion of the main opinion that concludes that, because this case involves the potential termination of parental rights and two separate custody petitions, "many, if not all, of the Alabama witnesses will provide evidence material to those issues." This is not necessarily the case, as the juvenile court's evidentiary hearing on remand may reveal.
However, I agree with the result in this case requiring the juvenile court to conduct an evidentiary hearing before deciding whether to transfer this case to the tribal court in Oklahoma.
*896 MURDOCK, Judge, concurring in the judgment of reversal only.
I believe the juvenile court's August 4, 2005, order was properly entered. I conclude that the Indian Child Welfare Act is not applicable in this case. Even if it were, I conclude that "good cause" has been shown "for the retention of state court jurisdiction," see In re C.W., 239 Neb. 817, 826, 479 N.W.2d 105, 112 (1992), and that the child's great aunt does not qualify as an "extended family member" under the act. Accordingly, as this court effectively did in its initial March 7, 2006, order in this case, I would reverse the trial court's January 26, 2006, order without remanding the cause for any further hearing.
NOTES
[1] Arthur Ellsworth was also named as a potential intervenor in that motion. The materials before this court do not indicate the manner in which Ellsworth is connected with the Chickasaw Nation.
[2] K.J. did not participate in the proceedings in the juvenile court and has not filed a brief in this court.
[3] Before filing the motion to amend, S.R., the foster father, had not filed a petition for custody of the child, and he does not appear to have joined B.R.'s March 29, 2005, petition. We construe the juvenile court's order granting the motion to amend the March 29, 2005, petition as also adding S.R. as a party to the action.
[4] A motion filed pursuant to Rule 59, Ala. R. Civ. P., may 4 be taken only from a final judgment. Momar, Inc. v. Schneider, 823 So.2d 701, 704 (Ala.Civ.App.2001). As discussed later in this opinion, we conclude that this matter is properly before this court as an appeal of a final judgment rather than as a petition for a writ of mandamus.
[5] The January 26, 2006, order provides, in pertinent part:

"This matter comes before the Court upon its own review of the file of the above-named minor after numerous filings were docketed since this Court's Order of July 28, 2005. The Court notes that on April 5, 2005, the District Court of the Chickasaw Nation agreed to accept transfer of this case. In this Court's Order of [August 4,] 2005, this Court based its findings for this Court to maintain jurisdiction on the fact that there would be no undue hardship on any of the witnesses or parties.
"Since that Order numerous pleadings have been filed, including witness lists supplied by the parties, which lists show multiple witnesses and parties who live in the State of Oklahoma. In light of the fact that the Indian Child Welfare Act applies to this case and must be strictly construed, and after reviewing the multiple pleadings, and especially in light of the numerous witnesses and parties who would be required to come from the State of Oklahoma to the State of Alabama, it is ORDERED as follows:
"1. That the present case is hereby transferred to the jurisdiction of the District Court of the Chickasaw Nation in the State of Oklahoma."
[6] In In re the Adoption of Baby Boy L, 231 Kan. 199, 643 P.2d 168 (1982), the Supreme Court of Kansas further explained the "Existing Indian Family" exception to the ICWA. Among other things, that court noted that the purpose of the ICWA "was not to dictate that an illegitimate infant who has never been a member of an Indian home or culture, and probably never would be, should be removed from its primary cultural heritage and placed in an Indian environment over the express objections of its non-Indian mother." 231 Kan. at 206, 643 P.2d at 175.
[7] The Chickasaw Nation contends in its brief to this court that "[t]he only reason the child has not been in an `Indian family environment' is because DHR removed the child from her mother's custody and placed her in a `non-Indian' foster home." The Chickasaw Nation alleges that DHR took that action in spite of its knowledge of the child's heritage as an Indian. The allegations contained in the guardian ad litem's postjudgment motion dispute those allegations. Among other things, the guardian ad litem has alleged that the great aunt and the mother had only recently joined the Chickasaw Nation, that the mother's family has not participated in any Indian culture, and that the mother did not advocate placing the child with the great aunt until the filing of the termination petition was imminent.
[8] The guardian ad litem also argues, as a separate issue, that the juvenile court erred in failing to conduct a hearing on her postjudgment motion filed in that court. We address that argument later in this opinion.
[9] The court stated that it reached its decision based on

"the 8-year history of the case, including the facts that the [mother] opposed [an earlier proposed transfer to another tribe], . . . and that in 1982 the [other tribe] approved of placement of two of the children in non-Indian homes. Not only was the petition for transfer filed at an advanced stage in the proceedings, but all of the evidence was located in Lancaster County. To transfer the proceedings to the tribal court, located in South Dakota, would pose an undue hardship to the witnesses and parties. . . . "
In re C.W., 239 Neb. at 830, 479 N.W.2d at 115.
[10] This appeal preceded the appeal in Chester County Department of Social Services v. Coleman, 303 S.C. 226, 399 S.E.2d 773 (1990), cited earlier in this opinion.