23297

CHESTER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent v. Joe L. COLEMAN, Phyllis Coleman and Dorothy Clark, Indian Child Welfare Coordinator of the Cheyenne River Sioux Juvenile Court, Respondents. In re Billie Joe MORRISON, DOB: 1-1-78, Tara Morrison, DOB: 5-9-79, Jacqueline Coleman, DOB: 10-26-81, Heather Coleman, DOB: 1-31-83, all minor children under the age of Eighteen (18) years. Of whom Billie Joe Morrison, Tara Morrison, Jacqueline Coleman and Heather Coleman, by and through their duly appointed Guardian Ad Litem Richard M. Steele, are Appellants.

(399 S.E. (2d) 773)

Supreme Court

*Robert Marshall Jones,* Rock Hill, *for appellants.*

*Claude S. Coleman,* of *Chester County Dept. of Social Services,* Chester, *for respondent.*

*Scott B. McElroy,* of Boulder, Colo., and *George M. Hearn,* Conway, *for respondents Dorothy Clark,* and *Cheyenne River Sioux Tribe.*

*Joe* and *Phyllis Coleman,* Howes, S.D., *pro se.*

Heard Sept. 25, 1990.

Decided Dec. 10, 1991.

*Per Curiam:*

This case involves the application of the Indian Child Welfare Act.[1] The sole issue is whether the family court erred in transferring jurisdiction of the case to the Cheyenne River Sioux Tribe (Tribe), in South Dakota. We reverse the order of the family court.

## I. FACTS

This case involves the application of the Indian Child Welfare Act to proceedings in Chester County regarding the removal of four Indian children from their parents. The proceedings in this case are complicated and have been protracted. However, a brief summary of pertinent portions of the proceedings is necessary. The children were removed from their parents in November, 1983, due to physical abuse. Since that time, they have remained in temporary foster care in South Carolina, pending the outcome of this case. In September, 1985, the Department of Social Services also alleged sexual abuse. Efforts to rehabilitate the parents were unsuccessful, but parental rights were not terminated because the parents, Joe and Phyllis Coleman,[2] moved to transfer jurisdiction to the Cheyenne River Sioux Tribal Court pursuant to the Indian Child Welfare Act. The Indian Welfare Act mandates that certain state court proceedings be transferred to the jurisdiction of the child's tribe, absent good cause. 25 U.S.C. § 1911(b) (1978). After a hearing, the family court issued an order on November 10, 1986, requiring the transfer of custody and jurisdiction of the children to the Tribe.

This order was then stayed by the family court pending a final decision on appeal. On September 26, 1988, the Court of Appeals rendered an opinion remanding the case to family court to consider factors which might constitute "good cause" for the family court to retain jurisdiction. *Chester County Dept. of Social Services v. Coleman,* 296 S.C. 355, 372 S.E. (2d) 912 (1988). The family court held a hearing and on April 5, 1989, issued an order finding that "good cause" did not exist to retain jurisdiction, and ordering custody of the children trans-

---

[1] 25 U.S.C. § 1901 *et seq.* (1978).

[2] Phyllis Coleman is the mother of all four children. Joe Coleman is the father of only the two youngest children.

ferred to the Tribe. The family court denied a motion for supersedeas made by the guardian ad litem on behalf of the children. On July 21, 1989, we granted the guardian ad litem's motion for supersedeas.

## II. DISCUSSION

The sole issue presented is whether jurisdiction should be transferred to the tribal court pursuant to the Indian Child Welfare Act which provides that:

> In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe.

25 U.S.C. § 1911(b) (1978).

This Act was enacted because large numbers of Indian children were being separated from their families and tribes caused by adoption and foster care placement in non-Indian homes by state welfare entities. 25 U.S.C. § 1901(4) (1978). To remedy this problem, this Act provides Indian tribes with a central role in custody proceedings involving Indian children. Thus, proceedings involving Indian children must be transferred to the jurisdiction of the Indian child's tribe, "in the absence of good cause to the contrary." 25 U.S.C. § 1911(b) (1978).

"Good cause" is not defined in the Act itself. However, the legislative history states that the term "good cause" was designed to provide state courts with flexibility in determining the disposition of a child custody proceeding involving an Indian child. S.Rep. No. 597, 95th Cong., 1st Sess. 17 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 7530. The Bureau of Indian Affairs (BIA) published non-binding guidelines to aid state courts in interpreting the Act. (BIA Guidelines) *See* Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67584 (1979). The BIA Guidelines list several factors which may constitute "good cause" to deny transfer of jurisdiction to a tribal court. 44 Fed. Reg. at 67591. Appellant argues that "good cause" exists to deny transfer of jurisdiction under the BIA Guidelines, because the case "could

not be adequately presented to the tribal court without undue harship to the parties and the witnesses." 44 Fed. Reg. at 67591, Guideline (b)(iii) (1979). The commentary to this BIA Guideline points out that:

> Consideration of whether or not the case can be properly tried in tribal court without hardship to the parties or witnesses was included on the strength of the section-by-section analysis in the House Report on the Act, which stated with respect to the § 1911(b), "[t]he subsection is intended to permit a State court to apply a modified doctrine of *forum non conveniens*, in appropriate cases, to insure that the rights of the child as an Indian, the Indian parents or custodian, and the tribe are fully protected."

44 Fed. Reg. at 67591.

The doctrine of *forum non conveniens* is modified in the Indian child custody context so as to allow state courts to determine whether the tribal court is a less convenient forum. The BIA Guidelines acknowledge that "application of this criterion will tend to limit transfers to cases involving Indian children who do not live very far from the reservation." 44 Fed. Reg. at 67591.

The family court determined that a denial of transfer of jurisdiction was not warranted based on the inconvenience or hardship to witnesses, because it would be "far more difficult for the Tribe to participate in these proceedings" in South Carolina than for the South Carolina witnesses to testify in South Dakota. We disagree.

Several courts have held that "good cause to deny transfer of jurisdiction to the tribal court may arise from geographical obstacles." *In Interest of J.R.H.*, 358 N.W. (2d) 311, 317 (Iowa 1984). In the case of *Matter of Wayne R.N.*, 107 N.M. 341, 757 P. (2d) 1333 (N.M. App. 1988), the New Mexico court denied a transfer to the tribal court, noting that if the "case were to be transferred to the tribal court, the witnesses would all be forced to travel to Oklahoma, at considerable expense and difficulty." *Id.* 757 P. (2d) at 1336. In the case of *Matter of N.L.*, 754 P. (2d) 863 (Okl. 1988), the Oklahoma court denied a request for transfer to a tribal court, finding that "good cause to deny a transfer has been found where almost all the parties and witnesses reside in the county of the state court and have

no contact with the tribal court." 754 P. (2d) at 869. *See also In re Robert T.*, 200 Cal. App. (3d) 657, 246 Cal. Rptr. 168 (1988) (holding that proximity of the court to the numerous records and witnesses in the proceedings are pertinent and adequate reasons to deny transfer); *People in Interest of J.J.*, 454 N.W. (2d) 317 (S.D. 1990) (upholding trial court's determination that evidence could not be adequately presented to tribal court without undue hardship to parties and witnesses).

Here, the bulk of the evidence and the majority of the witnesses necessary for the termination of parental rights action are located in South Carolina. South Carolina, through the Department of Social Services, has had extensive contact with the family unit. The Department of Social Services was involved in the physical and sexual abuse hearings, in the attempt to rehabilitate the parents, and in evaluating and treating the children. Throughout the various hearings involving these children, there has been extensive testimony from experts, including doctors, psychologists, social workers, and child abuse specialists. At the most recent family court hearing, ten witnesses testified as to the care, treatment and evaluation of the children over the prior six years. These witnesses included experts as well as the children's teachers, their foster parents, and neighbors of the foster parents. All of the witnesses to the physical and sexual abuse, as well as records of treatment and evaluation, are located in South Carolina, while the tribal court is located several thousand miles away in South Dakota.

If parental rights are terminated, there will be an adoptive placement hearing. The proceedings for adoptive placement will involve testimony from witnesses from both South Carolina and South Dakota. The foster parents in South Carolina who currently have custody of the children would like to adopt them. However, the Indian Child Welfare Act provides that "a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families." 25 U.S.C. § 1915(a) (1978). In attempting to show that "good cause" exists to overcome this preference, the foster parents will inevitably utilize testimony of neighbors, friends, family, teachers, social workers, and psychologists to show their fitness as parents, to

show how well the children have adjusted to their foster home, and to show the impact on the children of removing them from their foster home. All of these witnesses would have to travel to South Dakota for the adoptive placement hearing. Since the Tribe does not have to show good cause to overcome the preference, it seems likely that fewer witnesses from South Dakota will be involved.

In appeals from the family court, this Court has authority to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence. *Miller v. Miller*, 299 S.C. 307, 384 S.E. (2d) 715 (1989). We find that the facts demonstrate that if this case were to be transferred to the trial court, it would cause undue hardship by forcing numerous witnesses from South Carolina to travel to South Dakota at considerable expense and difficulty. We realize that by retaining jurisdiction, we are imposing some hardship on the parties and witnesses from South Dakota. However, this case has been in our court system seven years, during which time numerous hearings have been held, and volumes of records have been compiled. In addition, there are at least a dozen witnesses in this State who have had extensive contact with the children and with this case. These witnesses have been in close contact with the children and will be able to provide invaluable testimony in the future proceedings. Thus, we conclude that it is imminently more practical to allow the case to proceed in South Carolina. Based on the foregoing, we find that good cause was shown to deny the transfer. Accordingly the order of the family court is

Reversed.

HARWELL, Acting C.J., CHANDLER, FINNEY and TOAL, JJ., and James E. MOORE, Acting Associate Justice, concur.