2004 SD 96

**In the Matter of the GUARDIANSHIP OF J.C.D., A Minor Child.**

**No. 22998.**

Supreme Court of South Dakota.

Considered on Briefs June 1, 2004.

Decided Aug. 25, 2004.

Caitlin F. Collier, Vermillion, South Dakota, Attorney for appellant Mother R.C.

Elizabeth Rosenbaum, Sioux City, Iowa, Attorney for appellees Grandparents D.D. & B.D.

KONENKAMP, Justice.

[¶ 1.] In this guardianship action, the mother timely moved to transfer jurisdiction to tribal court. All parties stipulated that the matter was controlled by the Indian Child Welfare Act (ICWA). On considering the motion, the trial court ruled that good cause existed to deny the transfer because witnesses and parties would be unduly burdened if the motion was granted and because the best interests of the child were best served by denying the request. Because these reasons were inadequate to override the mandates of ICWA, we reverse.

**Background**

[¶ 2.] J.C.D. was born on December 16, 2001. He has lived in the Vermillion, South Dakota area all his life, where he has been in the custody of his mother, R.C. The mother and father resided together in Vermillion. They were fulltime students at the University of South Dakota. The mother and J.C.D. are enrolled members of the Crow Creek Sioux Tribe. Both the mother and father have a history of legal troubles. At the time of the circuit court's decision, the father stood charged with grand theft and third degree burglary.

[¶ 3.] J.C.D.'s paternal grandparents live in rural Union County, not far from Vermillion. The maternal grandmother, H.C., a former resident of Vermillion, now lives in Mitchell, South Dakota. With the parents having busy educational, employment, and social schedules, they relied heavily on the paternal grandparents to provide daily care for J.C.D. In May 2002, the paternal grandparents applied for temporary guardianship in order to assure the child's safety and well being. At the time, the mother was in jail and the father had requested their help because he was unable to care for the child. On May 15, 2002, the circuit court appointed the paternal grandparents temporary guardians for a period of six months. Since that time, they have provided for all the child's physical and emotional needs.

[¶ 4.] On September 18, 2002, the paternal grandparents petitioned for permanent guardianship because they believed that the mother and father were unable to properly care for J.C.D. That same day, the mother enrolled J.C.D. in the Crow Creek Sioux Tribe. Notice of this proceeding was given to the Tribe. On September 30, 2002, the mother moved to transfer jurisdiction of the proceedings to the Crow Creek Tribal Court. On October 3, 2002, the Tribe made an appearance and moved to intervene. In response, the paternal grandparents agreed to the intervention but resisted the transfer.

[¶ 5.] On October 21, 2002, a hearing was convened on the matter. The court took the transfer issue under advisement and proceeded to hear testimony in support of the guardianship. Before the hearing concluded, the parties stipulated that the trial court should enter an order placing legal guardianship of J.C.D. with the paternal grandparents. However, in accord with the stipulation, the parties reserved the right to appeal any legal issue that they believed existed. In accord with the stipulation, the trial court entered an order and letters of guardianship.

[¶ 6.] On February 6, 2003, the father moved the court to reconsider the existing guardianship. On February 11, 2003, the mother moved to reconsider the guardianship for failure to establish jurisdiction under the Indian Child Welfare Act. The transfer motion was heard on April 30, 2003.

[¶ 7.] At the hearing, all parties agreed that the provisions of ICWA applied. Using Bureau of Indian Affair guidelines defining "good cause," the trial court found that "good cause" to retain jurisdiction existed and therefore denied the transfer request. The mother now appeals on several issues. We deem the following issue dispositive: "Did the trial court err in denying the natural mother's motion to transfer jurisdiction of the guardianship proceedings to the tribal court, in particular, by finding undue hardship existed as good cause to deny transfer to tribal court, and by incorrectly considering and/or applying a 'best interests of the child' standard inappropriate for ICWA cases?"

## Analysis and Decision

■ [¶ 8.] ICWA was created to protect the best interests of Indian children and to promote the security of Indian tribes. 25 USC §§ 1901–63. This purpose is achieved by ensuring that tribes play an expanded role in custody proceedings involving Indian children. We first address the paternal grandparents' argument that ICWA is inapplicable here because it specifically provides that it only applies to foster care placements and termination of parental rights proceedings. This is clearly not a termination proceeding. So we must examine whether this case involves a "foster care placement." See 25 USC § 1911(c). The Indian Child

Welfare Act defines "foster care placement" as

> any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated.

25 USC § 1903(1)(i).

[¶ 9.] Although we have never specifically addressed this question in a grandparent guardianship case, several other courts have. The majority rule is typified by *In re A.K.H.*, 502 N.W.2d 790, 792 (Minn.Ct.App.1993). There, a grandmother successfully obtained sole physical and legal custody of an Indian child, with visitation rights for the parents. Their rights were not terminated. The Minnesota court had to decide whether an Indian tribe had a statutory right to intervene under ICWA. And the question became whether the proceeding involved a foster care placement. In examining the provisions of ICWA, the court found that (1) an Indian child was removed from the child's parent or Indian custodian; (2) the child was temporarily placed in "the home of a guardian"; (3) the parents could not have the child returned upon demand; and (4) parental rights had not been terminated. Although the court did not conclude that the grandmother's home was a foster home under ICWA, it reasoned that the nature of the guardianship did not allow for the return of the child upon demand, thus it qualified as a guardian placement under ICWA, and therefore ICWA applied.

[¶ 10.] Similarly, in the case of *In re S.B.R.*, 43 Wash.App. 622, 719 P.2d 154, 156 (1986), the court ruled that the rights acquired by the grandparents qualified as an ICWA guardianship. Because the fa-

ther could not have the child returned upon demand, but could only seek to modify the guardianship decree, this was a placement proceeding contemplated by ICWA. We think this reasoning is sound. ICWA applies to this guardianship proceeding.

■ [¶ 11.] We turn now to address the mother's appeal issue. She questions whether the trial court erred in determining that "good cause" existed to deny the transfer. We hold that "good cause" did not exist. Section 1911(b) of ICWA provides:

> In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided,* That such transfer shall be subject to declination by the tribal court of such tribe.

25 USC § 1911(b). Because nowhere within the provisions of ICWA is "good cause" defined, we look to the BIA guidelines. *In re J.L.*, 2002 SD 144, ¶ 12, 654 N.W.2d 786, 790. These guidelines suggest that "good cause to the contrary" may include situations where "evidence necessary to decide the case cannot be adequately presented to the tribal court without *undue* hardship to witnesses and parties[.]" *Id.* (emphasis added).

[¶ 12.] In making its determination to deny transfer to the tribal court, the circuit court reasoned that "the expense and inconvenience which would be incurred by petitioners if this matter [were] transferred to Fort Thompson, when all of the

witnesses (probably for both parties) are located in Vermillion, outweighs the other applicable guidelines." In their brief, the paternal grandparents list several witnesses who would be required to travel to the Crow Creek Sioux Tribal Court if the motion for transfer were granted. While we admit that there may be some inconvenience involved, we cannot say that the hardship would be "undue." Under the trial court's and the paternal grandparents' reasoning, almost every case involving a child not residing on a reservation could be denied transfer. Generally, courts have denied transfer where very long distances existed between the parties and the tribal court. *See In re S.S.*, 167 Ill.2d 250, 212 Ill.Dec. 590, 657 N.E.2d 935, 943 (1995) (motion to transfer from Illinois to Montana denied); *In re J.R.H.*, 358 N.W.2d 311, 317 (Iowa 1984) (motion to transfer from Iowa to South Dakota denied); *In re A.P.*, 25 Kan.App.2d 268, 961 P.2d 706, 712 (Kan.Ct.App.1998) (motion to transfer from Kansas to South Dakota denied); *Chester County Dep't of Soc. Serv. v. Coleman*, 303 S.C. 226, 399 S.E.2d 773, 775–76 (1990) (motion to transfer from South Carolina to South Dakota denied). No similar circumstances exist here.

[¶ 13.] Nor are we convinced by the paternal grandparents' attempt to analogize this case to *Interest of J.J.*, 454 N.W.2d 317 (S.D.1990). In that case, the trial court did not solely rely on undue hardship. *Id.* There, the trial court considered other factors along with the undue hardship factor to arrive at its decision. Furthermore, the facts in that case indicate that the state court proceedings had already been lengthy and protracted. *Id.* There were no similar findings here.

[¶ 14.] Left then is the circuit court's reliance on the child's best interests as a factor in determining that jurisdiction should not be transferred. While we have suggested that a trial court may properly consider a child's best interests in determining whether transfer of jurisdiction is proper, we recently cautioned, "that a substitute parent might provide a child with good care or even better care than its natural parent is not an appropriate standard for determining the best interests of a child" in the context of a ICWA transfer decision. *J.L.*, 2002 SD 144, ¶ 21, 654 N.W.2d at 792. The conclusions of the trial court point to little else. In its decision the court explained, "based on the record at the present time this Court is satisfied that the [paternal grandparents] truly care for [J.C.D.] and have done whatever they could to care for him. They have provided a good home, medical care, and the care and stability that [J.C.D.] needs. Based on the record before the Court at this time the Court concludes that it would be in [J.C.D.'s] best interests to remain with [the Paternal Grandparents]." We have no reason to doubt the veracity of these findings. Undoubtedly, the paternal grandparents love this child and have met all his needs. However, as we point out above, that is not a sufficient standard upon which to deny a motion to transfer. It is for the Crow Creek Tribal Court to consider these matters and decide what is in J.C.D.'s best interests.

[¶ 15.] Reversed.

[¶ 16.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.