# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on* Friday *the* 31st *day of* October, 2014.

Dinwiddie Department of Social Services,                    Appellant,

  against       Record No. 131584
               Court of Appeals Nos. 1947-12-2,
               1948-12-2, and 1949-12-2

Renee Bagley Nunnally, et al.,                             Appellees.

                                  Upon an appeal from a
judgment rendered by the Court
of Appeals of Virginia.

Upon consideration of the record, briefs, and argument of counsel, the Court is of the opinion that for the reasons stated in the unpublished memorandum opinion of the Court of Appeals (Renee Bagley Nunnally, et al. v. Dinwiddie Department of Social Services, Record Nos. 1947-12-2, 1948-12-1, 1949-12-2) in this matter dated September 10, 2013, the judgment of the Court of Appeals will be affirmed.

Renee Bagley Nunnally ("mother") and Timothy B. Nunnally ("father") are the parents of young twin girls. The mother is a member of the Citizen Potawatomi Nation ("Tribe"), a federally recognized Indian Tribe that is located in Shawnee, Oklahoma. The father is not of Indian descent and is not a member of any tribe. The children are either members of, or eligible to be members of, the Tribe.

The children were removed from their parents' home and placed in the temporary custody of a relative in November 2010, while services were offered to their parents. However, the parents

failed to comply with the requirements set by the Juvenile and Domestic Relations District Court for Dinwiddie County ("J&DR court"), and custody of the children was transferred to the Dinwiddie Department of Social Services ("DDSS") in April 2011.

In June 2011, DDSS filed petitions for foster care plans with the goal of adoption and to terminate the Nunnallys' parental rights. The Tribe then filed a motion to intervene, which was granted on September 16, 2011. The Tribe also filed a motion to transfer jurisdiction to tribal court under the Indian Child Welfare Act of 1978 ("ICWA"), which the J&DR court considered on October 14, 2011, along with DDSS' petitions to terminate the mother and father's parental rights. The J&DR court denied the petitions to terminate parental rights, apparently due to the unavailability of a required expert witness.

DDSS and the guardian ad litem appointed to represent the children filed timely appeals in the Circuit Court of Dinwiddie County ("trial court") on November 1, 2011. The Tribe filed a notice of intervention and a motion to transfer the case to tribal court on December 12, 2011. Both parents also filed separate motions seeking to transfer the matter to tribal court.

The trial court held a hearing on the motion to transfer, during which DDSS and the guardian ad litem both objected to transferring the case to tribal court. On August 29, 2012, the trial court held that good cause existed not to transfer the proceeding to tribal court. The trial court determined that the case was at an advanced stage when the transfer petition was received. The trial court also found that the case could not adequately be presented in tribal court without undue hardship to

2

the parties or witnesses, and that to remove the children from their current foster home would be extremely harmful to them. The trial court subsequently terminated the mother and father's parental rights.

The mother and father filed separate appeals to the Court of Appeals of Virginia challenging the trial court's holding that good cause existed not to transfer and the trial court's decision to terminate their parental rights.

The Court of Appeals issued an unpublished memorandum opinion in which it reversed the judgment of the trial court on the motion to transfer, vacated the order terminating the parental rights of the mother and father, and remanded for further proceedings consistent with the published opinion it simultaneously released in the case of Thompson v. Fairfax County Dep't of Family Servs., 62 Va. App. 350, 747 S.E.2d 838 (2013). In Thompson, the Court of Appeals rejected the traditional "best interests of the child test" in favor of the more limited test involving an immediate serious emotional or physical harm, or a substantial risk of such harm, to a child arising from the transfer to a tribal court. Id. at 374-75, 747 S.E.2d at 850.

We affirm the Court of Appeals' decision to reverse and remand this matter to the trial court in light of the standards articulated in Thompson.

This order shall be certified to the Court of Appeals of Virginia and to the Circuit Court of Dinwiddie County, and shall be published in the Virginia Reports.

---

JUSTICE MILLETTE, with whom CHIEF JUSTICE KINSER and JUSTICE POWELL join, concurring in part and dissenting in part.

The majority opinion disregards precedent from the Supreme Court of the United States, substitutes its judgment for that of Congress, and embraces an entirely novel analysis that is, upon inspection, indistinguishable from a standard that the majority opinion concedes is inappropriate. While I join in that portion of the majority opinion directing remand of this matter to the trial court, for the reasons explained below, I respectfully dissent from that portion approving the incorporation of a modified "best interests of the child" consideration into the purely jurisdictional "good cause" analysis in considering whether a matter should be transferred to a tribal court.

I. Discussion

A. The Indian Child Welfare Act

At issue is the Indian Child Welfare Act of 1978 (the "ICWA"), 25 U.S.C. § 1901 et seq., passed by the United States Congress over 35 years ago. The ICWA is designed to "protect the best interests of Indian children." 25 U.S.C. § 1902. As relevant to this appeal, the ICWA accomplishes this goal by providing for tribal court jurisdiction over child custody proceedings involving an Indian child pursuant to a "dual jurisdictional scheme" set forth in 25

4

U.S.C. § 1911. Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 36 (1989).

Section 1911(a) "establishes exclusive jurisdiction in the tribal courts for proceedings concerning an Indian child who resides or is domiciled within the reservation of such tribe, as well as for wards of tribal courts regardless of domicile." Holyfield, 490 U.S. at 36 (emphasis added) (internal quotation marks omitted). Section 1911(a) does not apply to this case.

Section 1911(b) "creates concurrent but presumptively tribal jurisdiction in the case of [Indian] children not domiciled on the reservation" for proceedings involving foster care placement and termination of parental rights. Holyfield, 490 U.S. at 36 (emphasis added). Section 1911(b) applies to this case.

Section 1911(b) permits "any [s]tate court proceeding for the foster care placement of, or termination of parental rights to, an Indian child" to be "transfer[red] to the jurisdiction of the tribe." Four statutory requirements must be met for such a transfer to occur: (1) "either parent[,] or the Indian custodian[,] or the Indian child's tribe" must petition for a transfer; (2) neither parent can object to the transfer; (3) the tribal court to which the case would be transferred must not decline the transfer; and (4) there must be an "absence of good cause to the contrary." 25 U.S.C. § 1911(b). Only this fourth requirement is at issue in this appeal, and the majority opinion errs in approving the Court of Appeals' determination of what considerations are appropriate for the "good cause" analysis.

5

B.    The Majority Opinion Errs by Incorporating a "Best Interests of the Child" Consideration into the "Good Cause" Analysis

Today, the majority opinion summarily approves of the Court of Appeals' explanation of what a court should consider in the "good cause" analysis, as set forth in Thompson v. Fairfax County Department of Family Services, 62 Va. App. 350, 747 S.E.2d 838 (2013).  I disagree with one significant aspect of the Thompson decision.  The Court of Appeals incorporated a modified "best interests of the child" consideration into the purely jurisdictional "good cause" analysis.  Id. at 373-77, 747 S.E.2d at 850-52.  In particular, the majority opinion approves of a court's consideration of whether "clear and convincing evidence [establishes] that transferring the case to a tribal court would cause, or would present a substantial risk of causing, immediate serious emotional or physical damage to the child."  Id. at 376, 747 S.E.2d at 851.

Incorporating this consideration into the Section 1911(b) "good cause" analysis is error for the following reasons.

1. A "Best Interests" Consideration Contravenes
United States Supreme Court Precedent

The Supreme Court of the United States has noted that 25 U.S.C. § 1911 is a jurisdictional statute.  Holyfield, 490 U.S. at 36.[1]  As such, Section 1911(b) only allows a state court to determine "who should make the [foster care or parental rights] determination

---

[1] Holyfield resolved legal issues pertaining to Section 1911(a). See 490 U.S. at 42-54.  Nevertheless, the Supreme Court's general discussion of 25 U.S.C. § 1911 applies with equal force to Section 1911(b).

6

concerning [Indian] children." Id. at 53.  Notably, a state court cannot use Section 1911(b) to decide substantive issues, such as "what the outcome of [the foster care or parental rights] determination should be." Id.  Instead, a state court "must defer to the experience, wisdom, and compassion of the" tribal court, because it is the tribal court that must rule on the substantive issues once jurisdiction is transferred.  Id. at 53-54 (internal quotation marks omitted); see also Duncan Energy Co. v. Three Affiliated Tribes of the Fort Berthold Reservation, 27 F.3d 1294, 1301 (8th Cir. 1994) ("Absent any indication of bias, we will not presume the Tribal Court to be anything other than competent and impartial.").

The "best interests" consideration contravenes this direction by allowing a state court to second guess a tribal court's determination of substantive issues.  This is because the actual act of transferring jurisdiction is not, in and of itself, something that can cause "serious emotional or physical damage to the child." Thompson, 62 Va. App. at 376, 747 S.E.2d at 851.  Jurisdiction, being a "court's power to decide a case or issue a decree," is an abstract concept, and the real world consequences of transferring jurisdiction require only that parties argue in front of, and papers be filed with, a different tribunal.  Black's Law Dictionary 980 (10th ed. 2014); see Kern Oil & Refining Co. v. Tenneco Oil Co., 840 F.2d 730, 734 (9th Cir. 1988) (discussing the effects of jurisdiction being transferred between federal district and appellate courts).

The act of transferring jurisdiction, then, cannot harm a child.  Instead, only substantive decisions subsequent to the

7

transfer of jurisdiction - such as a tribal court's determination that the Indian child should be moved to a new adoptive family before ultimate resolution of the proceedings -fall within the scope of a "best interests" consideration.  The Court of Appeals recognized this fact when it held that the focus "must remain on the immediate serious emotional or physical damage flowing from the transfer itself."  Thompson, 62 Va. App. at 376, 747 S.E.2d at 851.  However, the Court of Appeals then compounded its error when it considered as relevant to this determination "whether the Tribe is willing to allow the child to stay in her current environment, pending adjudication of the case on the merits of termination and/or placement."  Id.  These post-transfer, substantive decisions are the very tribal court determinations that a state court cannot second guess.  See Holyfield, 490 U.S. at 53-54.

### 2. Congress Has Already Spoken to an Indian Child's "Best Interests" in the Jurisdictional Scheme

To the extent a "best interests" consideration is relevant, it has already been decided by Congress in enacting the ICWA.  Congress made clear its reasons for enacting the ICWA in its "Congressional findings," stating specifically: "the States, [when] exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families."  25 U.S.C. § 1901(5).  The ICWA thus "protect[s] the rights of [an] Indian child as an Indian . . . . by making sure that Indian child welfare determinations are not based on a white, middle-class standard which, in many cases, forecloses placement

8

with an Indian family." Holyfield, 490 U.S. at 37 (internal quotation marks and alterations omitted).

To protect Indian children from these dangers, Congress found it to be in the best interests of Indian children for foster care and parental right proceedings to be "presumptive[ly]" under the jurisdiction of a tribal, rather than state, court. Holyfield, 490 U.S. at 36; see 25 U.S.C. § 1902. That is, the presumption of tribal jurisdiction is in and of itself in the best interests of Indian children because tribal courts have "the experience, wisdom, and compassion . . . to fashion an appropriate remedy" in these cases. Holyfield, 490 U.S. at 54; see 25 U.S.C. §§ 1901(3)-(5); 1902; 1911(B). There is no further "best interests" consideration to be made. Whether post-transfer actions have a negative impact on Indian children was a risk Congress believed appropriate because it is tribal courts that are most familiar with, and responsive to, the needs of their Indian community and Indian children. 25 U.S.C. § 1901(4), (5).

Additionally, because the ICWA "precludes the imposition of Anglo standards by creating a broad presumption of jurisdiction" in tribal courts, allowing a "best interests" consideration under Section 1911(b) "defeats the very purpose for which the ICWA was enacted [by allowing] Anglo cultural biases into the analysis." Yavapai-Apache Tribe v. Mejia, 906 S.W.2d 152, 169-70 (Tex. App. 1995).

### 3. The Court Adopts a Minority Position, One That Is Indistinguishable From a Position It Recognizes As Incorrect

Most states that have confronted the issue we face today have held that a "best interests" consideration is inappropriate under

9

the "good cause" analysis in Section 1911(b).  Eight states have conclusively adopted this position, including Colorado, Illinois, Minnesota, Missouri, Nebraska, New Mexico, North Dakota, and Texas.[2] People ex rel. J.L.P., 870 P.2d 1252, 1258 (Colo. Ct. App. 1994); In re Armell, 550 N.E.2d 1060, 1065-66 (Ill. App. Ct. 1990); In re Child of: R.L.Z. and R.G.L, 2009 Minn. App. Unpub. LEXIS 1015, at *14-16 (Minn. Ct. App. 2009) (unpublished); C.E.H. v. R.H., 837

---

[2] Additionally, three other states have not expressly held that the "good cause" analysis of Section 1911(b) precludes a "best interests" consideration, but their opinions imply such a position.

First, Iowa has adopted its own, state version of the ICWA. See Iowa Code §§ 232B.1 et seq.  Because that state law provides more than the minimum standards of the federal ICWA, the state ICWA governs transfer of jurisdiction for cases involving Indian children within Iowa.  See In the Interest of N.V., 744 N.W.2d 634, 637-38 (Iowa 2008).  Relevant to our purposes, the Iowa Supreme Court noted that Iowa courts never approved of a "best interests" consideration under the federal ICWA when it was the governing law. Id.

Second, the Utah Supreme Court held that Utah's state abandonment law cannot allow a minor's parent to change that minor's domicile to frustrate the exclusive jurisdiction provision of Section 1911(a).  In re Adoption of Halloway, 732 P.2d 962, 968-70 (Utah 1986).  In ruling on the ICWA's jurisdictional provisions preempting state law, the Utah Supreme Court refused to weigh typical "best interests" considerations, including "the bonding that [took] place between [the adoptive parents] and [the minor]." Id. at 971-72.

Third, the Wisconsin Court of Appeals held that a trial court did not err when considering a minor's "best interests" as it related to a Section 1911(b) "good cause" analysis, because that "best interests" consideration was tied solely "to the timeliness of the tribe's attempt to take jurisdiction of [the] case."  State v. Debra F., 695 N.W.2d 905, 2005 Wisc. App. 254, at *8 (Wis. Ct. App. 2005).  Timeliness is an appropriate consideration under the "good cause" analysis, and is not synonymous with a typical "best interests" consideration.

S.W.2d 947, 954 (Mo. Ct. App. 1992); In re Interest of Zylena R. v. Elise M., 825 N.W.2d 173, 184-86 (Neb. 2012) (overruling its decision to allow a "best interests" consideration in In re Interest of C.W., 479 N.W.2d 105 (Neb. 1992)); In re Guardianship of Ashley Elizabeth R., 863 P.2d 451, 456 (N.M. Ct. App. 1993); In re Interest of A.B. v. K.B., 663 N.W.2d 625, 633-34 (N.D. 2003); Yavapai-Apache Tribe, 906 S.W.2d at 169-71.

Only a minority of six states allow a "best interests" consideration in the Section 1911(b) "good cause" analysis, including Arizona, California, Indiana, Montana, Oklahoma, and South Dakota.[3] In re Maricopa Cnty. Juvenile Action No. JS-8287, 828 P.2d 1245, 1251 (Ariz. Ct. App. 1991); In re Alexandria P., 228 Cal. App. 4th 1322, 1355-56 (Cal. Ct. App. 2014); In re Adoption of T.R.M., 525 N.E.2d 298, 308 (Ind. 1988); In re T.S., 801 P.2d 77, 79-80 (Mont. 1990); Carney v. Moore (In re N.L.), 754 P.2d 863, 869 (Okla. 1988); In re Guardianship of J.C.D., 686 N.W.2d 647, 650 (S.D. 2004).

Four other state courts have acknowledged the issue, but avoided resolving it because the issue was not properly before the court. Ex parte C.L.J., 946 So.2d 880, 893-94 (Ala. Civ. App.

---

[3] The South Carolina Court of Appeals sanctioned a "best interests" consideration for Section 1911(b) purposes. Chester Cnty. Dep't of Social Servs. v. Coleman, 372 S.E.2d 912, 915 (S.C. Ct. App. 1988). However, when the South Carolina Supreme Court reviewed that decision, it remained notably silent on the "best interests" issue and held that the "good cause" analysis of Section 1911(b) is, essentially, a modified forum non conveniens analysis. See Chester Cnty. Dep't of Social Servs. v. Coleman, 399 S.E.2d 773, 775-77 (S.C. 1990). It is therefore unclear whether the South Carolina Court of Appeals' approval of the "best interests" consideration remains good law.

11

2006); <u>In re C.R.H.</u>, 29 P.3d 849, 854 n.24 (Alaska 2001); <u>In re J.L.A.</u>, 2007 Kan. App. Unpub. LEXIS 1154, at *2-6 (Kan. Ct. App. 2007) (unpublished); <u>In re Guardianship of J.O.</u>, 743 A.2d 341, 348-49 (N.J. Super. Ct. App. Div. 2000).

The Court of Appeals rejected the position of all these other courts, and instead fashioned a wholly novel, and supposedly narrow, "best interests" consideration. <u>Thompson</u>, 62 Va. App. at 373-76, 747 S.E.2d at 850-51. Today, by approving the Court of Appeals' <u>Thompson</u> decision, the majority opinion embraces a position that is a minority of one.

Moreover, upon closer scrutiny, it is clear that this supposedly limited "best interests" consideration is actually indistinguishable from the general "best interests" standard. The Court of Appeals acknowledged that "the traditional best interest of the child analysis is too broad a consideration in deciding whether good cause exists to retain jurisdiction" under Section 1911(b). <u>Thompson</u>, 62 Va. App. at 374, 747 S.E.2d at 850. But the majority opinion's limited "best interests" consideration is identical to the general "best interest" standard's scope and type of review of post-transfer tribal court rulings.

First, the limited "best interests" consideration affords the same scope of review of post-transfer tribal court rulings as the general "best interests" standard. The Court of Appeals created an "immediate serious emotional or physical damage flowing <u>from the transfer itself</u>" standard as the basis to determine what tribal court determinations are subject to a state court's "best interests" review. <u>Id.</u> at 376, 747 S.E.2d at 851. Putting to the side the fact that <u>all</u> post-transfer determinations are immune from a state

12

court's second guessing, see Holyfield, 490 U.S. at 53-54, this standard does not actually operate to segregate reviewable from unreviewable tribal court rulings.  The transfer of jurisdiction itself is, essentially, the proximate cause of the tribal court's ability to make any ruling in the proceeding.  Thus, all tribal court rulings occurring after a Section 1911(b) transfer of jurisdiction "flow[] from the transfer," Thompson, 62 Va. App. at 376, 747 S.E.2d at 851, and are subject to a state court's review under the majority opinion's "best interests" consideration.

Second, the limited "best interests" consideration affords the same type of review of post-transfer tribal court rulings as the general "best interests" standard.  That is, both allow a circuit court to focus on the same legal factors, including the emotional and physical impact that a ruling would have on a child.  Compare Bailes v. Sours, 231 Va. 96, 101, 340 S.E.2d 824, 827-28 (1986) (holding that a ruling which has a substantial "likelihood of inflicting serious harm" to the child "is repugnant to the child's best interest"), with Thompson, 62 Va. App. at 376, 747 S.E.2d at 851.  Further, the factual context which informs the weighing of such factors is likely to be the same for all tribal court rulings.  For example, questions of a child's mental and physical well being in light of the child's attachments to his current home, and the potential for danger in a new home, are equally present in a non-final ruling of whether a child should be moved to a new foster home before final disposition, and a ruling on the ultimate issue of whether the child should be placed in foster care or the parent's rights should be terminated.  Simply put, the majority opinion's

13

limited "best interests" consideration and the general "best interests" standard apply the same law to the same types of facts.

## II. Conclusion

For the aforementioned reasons, while I join that portion of the majority opinion's disposition of this action that directs remand of the present appeal to the trial court for consideration of the issues, I cannot join the majority opinion's decision to inject the Section 1911(b) jurisdictional "good cause" analysis with a mechanism for a state court to preemptively second guess a tribal court's substantive decisions. I would overrule the decision of the Court of Appeals in Thompson in part, to the extent it directed circuit courts to evaluate a "best interests" consideration, and reverse the Court of Appeals' disposition in the present case on that issue, and affirm the Court of Appeals decision in the present case in part, to the extent it directed the circuit court to evaluate the other "good cause" considerations set forth in Thompson, 62 Va. App. at 377-83, 747 S.E.2d at 851-55.

A Copy,

Teste:

*Date L Harrington*

Clerk

14